[No. 8943–9–I.  Division One.  August 17, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH MERVIN BROOKS, *Appellant.*

Robert Prince, for appellant (appointed counsel for appeal).

Norm Maleng, Prosecuting Attorney, and Stephen Moore, Deputy, for respondent.

SWANSON, J.—Kenneth Mervin Brooks appeals from the judgment and sentence entered following a jury verdict finding him guilty of 13 counts of second degree burglary and 1 count of possession of stolen property in the second degree. The State concedes error as to two of the charges, and we affirm the convictions on the remaining counts.

The charges arose out of a federally funded investigation known as the Seattle Target Crime Impact Project (the Project) whose purpose was to prosecute persons in King County involved in significant property crimes.

The Project leased a warehouse in Seattle and set up a trucking firm called APC Trucking as a "front" to mask the purchase of stolen property at the warehouse. The warehouse was modified with the installation of hidden videotape cameras and recorders, still cameras, and audio microphones and recorders. Videotapes and photographs were taken of all transactions and preserved as evidence. The Project made its first buy on February 21, 1979, and its last buy on September 14, 1979. During that time, 220 cases were developed.

In January of 1979, the defendant was paroled from Monroe Reformatory. While at the Reformatory the defendant had become reacquainted with high school friends, including Danny Wills and Larry Mitchell. The

defendant's first contact with the Project occurred on May 24, 1979, when, through Danny Wills, he was introduced to an undercover officer named Danny Beck. Special Agent Beck took the defendant to the warehouse where he sold two United States Savings Bonds. In the transactions that followed, the defendant and Danny Wills often acted as partners. In all, the defendant was involved in 22 transactions with the Project.

On August 16, 1979, the defendant and Larry Mitchell were arrested by a King County patrol officer in connection with a burglary that had occurred that morning in the Issaquah area. This burglary is referred to as the Tonkin burglary. Mitchell and the defendant were booked in the King County jail, and Mitchell's car was searched pursuant to a warrant. The police discovered property from several burglaries including some being investigated by the Project. Detective Robert Beck of the King County police (not to be confused with Special Agent Danny Beck of the Project) investigated the defendant's connection with the August 16 Tonkin burglary; however, it was determined that there was insufficient evidence to connect him to the stolen property. The defendant was released on August 24, 1979. Detective Beck was not aware of the existence of the Project, and, on the other hand, Project officials did not learn of the defendant's August 16 arrest until after the fact.

On October 3, 1979, about 2½ weeks after the fencing stage of the Project had ended, Special Agent Beck received a telephone call from the defendant and Danny Wills indicating that they had property to sell. Agent Beck relayed the information to the Seattle Police Department burglary unit and arranged to meet the defendant and Wills at the Terry Avenue Freighthouse where they both were arrested by Seattle police officers. The crime associated with this arrest is referred to as the Lakey burglary.

That same day, October 3, a parole detainer was placed on the defendant, and he was held in King County jail. On January 17, 1980, a 9–count information was filed in superior court, and a warrant was issued for the defendant's

arrest. The warrant was served on the defendant in jail on January 21, 1980, and he was arraigned the same day.

On January 28, 1980, a complaint was filed in district court charging the defendant with the Lakey burglary and possession of stolen property. On February 11, the defendant was bound over to superior court on those two charges. On February 21, 1980, the original information was orally amended to include the additional counts relating to the Lakey burglary. The State also moved to amend by adding eight additional counts of second degree burglary. The motion was granted, and an amended 19–count information was filed on February 27, 1980.

Trial was originally set for March 12, 1980, then extended. A jury was empanelled on March 21, 1980, but trial was continued until March 31. The defendant, however, stipulated that the trial commenced on March 21.

The jury returned guilty verdicts on 14 counts but left the verdict form blank as to 3 counts. Two counts were dismissed, one following defendant's motion challenging the sufficiency of the evidence, and one on the State's own motion. The trial judge declared a mistrial as to the 3 blank counts. The defendant filed a motion for new trial, arguing that the verdicts were inconsistent. The motion was denied, and the defendant was sentenced. On appeal, the defendant makes seven assignments of error which we will discuss seriatim.

The defendant's first argument is that the 2 counts relating to the Lakey burglary, counts 18 and 19, should have been dismissed for violation of former CrR 3.3.[1] The

---

[1] "(b) **Time Limits.**

"(1) The time limits set forth in subsections (b)(2) and (b)(3) shall commence to run from the date: (a) of the order binding the defendant over to the superior court following a preliminary hearing pursuant to JCrR 2.03 or (b) of the tenth day following the defendant's arrest in the event a preliminary hearing is not held or the charge is initially filed in the superior court.

"(2) A defendant unable to obtain pretrial release from custody shall be brought to trial within 60 days of the applicable event set forth in subsection (b)(1).

"(3) A defendant who is released from custody shall be brought to trial

State concedes that under *State v. Edwards,* 94 Wn.2d 208, 616 P.2d 620 (1980), the charges contained in counts 18 and 19 should have been dismissed.[2]

The defendant's next contention is that all the remaining counts should have been dismissed for violation of CrR 3.3. He argues that for purposes of the rule he was arrested on either August 16, or October 3, 1979. The defendant's contention is without merit. We have recently held that "arrest" within the meaning of former CrR 3.3 means the condition of being held to answer for a specific charge. *State v. Champion,* 28 Wn. App. 281, 622 P.2d 905 (1981). Regarding the August 16 incident, the trial court made a finding that the defendant was "arrested" only for investigation of the Tonkin burglary. This finding is supported by substantial evidence. The record reveals that the defendant was arrested by King County patrol officers who had no knowledge of, nor were in any way associated with, the Project. Moreover, the defendant was unconditionally released because the investigating officers did not believe they had sufficient evidence to tie the defendant to the Tonkin burglary or the other stolen property in the vehicle. It is thus clear that the defendant was not held to answer for the 19 charges which were eventually filed.

We also conclude that the defendant's arrest on October 3, 1979, did not trigger the time for trial for the 17 counts not associated with the Lakey burglary. Again, the trial court made findings that the defendant was arrested on October 3 for investigation of the Lakey burglary and was not arrested for investigation of the charges which were later filed in superior court. These findings are supported

---

within 90 days of the applicable event set forth in subsection (b)(1)." Former CrR 3.3, in part.

[2]In fairness, it should be noted that the trial judge did not have the benefit of *State v. Edwards, supra.* The opinion in *Edwards* was not filed until August 21, 1980, after trial in the instant case was recorded. Further, as is stated in *State v. Schapiro,* 28 Wn. App. 860, 864, 626 P.2d 546 (1981), "[N]o one could reasonably have anticipated *Edwards . . .*"

by substantial evidence. The Lakey burglary occurred after the fencing portion of the sting operation had ceased. Although Special Agent Beck of the Project set up the defendant's arrest on October 3, the arrest itself, as well as the follow–up investigation, was handled by Seattle Police Department officers. After the arrest, the defendant was held pursuant to a parole detainer.

At oral argument, counsel for the defendant suggested that the Lakey and Tonkin burglaries were "tied in" with the sting operation. It is clear, however, that these crimes were not related offenses for purposes of CrR 3.3 because they did not arise out of the same criminal act or episode and were not "intimately connected." *See State v. Erickson,* 22 Wn. App. 38, 44, 587 P.2d 613 (1978). The Lakey burglary occurred nearly 2 months after the last burglary in which the defendant sold property to the Project, and the arrest was handled by Seattle Police Department officers. No charge arising out of the Tonkin burglary was ever filed, and it was never a "Project case."[3]

We conclude that the defendant was not held to answer for the charges in the information, exclusive of the Lakey charges, until he was served in jail with an arrest warrant on January 21, 1980. It was at that point that he was arrested for purposes of CrR 3.3. Because the trial by stipulation commenced on March 21, 1980, less than 70 days from the date of arrest, CrR 3.3 was not violated.

The defendant's next assignment of error relates to the trial court's conclusion that he had waived his CrR 3.3 objection by failing to make a motion within 10 days of notice of the trial date as required by the rule. However, we

---

[3] We note that Larry Dean Mitchell, the man with whom defendant Brooks was arrested on August 16, 1979, filed a separate appeal in which he argued specifically that the Tonkin burglary was a related offense to six Project burglaries of which he was convicted. He, like the defendant here, argued that the speedy trial time limit thus began to run on August 16. However, we rejected his contention because the six burglaries were not based on the same criminal conduct as the Tonkin burglary and were not related offenses within the meaning of *State v. Erickson, supra. State v. Mitchell,* 30 Wn. App. 49, 631 P.2d 1043 (1981).

do not reach the issue of waiver, given our determination that the trial was timely under CrR 3.3.

The defendant argues next that the trial court erred in admitting in evidence videotapes of various sales of stolen property he made to the Project. His objection is twofold: (1) the tapes were cumulative of other testimony, and (2) the relevancy of the tapes was outweighed by their prejudice. The defendant fails to cite any authority to support his contention, and his reasoning is somewhat circular.[4] In any event, we find no error. Admission of videotapes is generally within the trial court's discretion, subject to the same requirements for admission of still photographs. *State v. Newman,* 4 Wn. App. 588, 484 P.2d 473 (1971). The defendant does not challenge the foundation laid for the videotapes. Further, we are not persuaded that the relevance was outweighed by their prejudice. Videotapes of "sting" transactions, even without sound, are of substantial probative value and tend to corroborate the officers' testimony. *Williams v. State,* ___ Ind. App. ___, 383 N.E.2d 444 (1978). In addition, the tapes here were not cumulative inasmuch as they did not include an audio playback and were shown at trial as an adjunct to the testimony of the officers who participated in the defendant's transactions with the Project. *Cf. People v. Barker,* 101 Mich. App. 599, 300 N.W.2d 648 (1981) (videotapes, including audio portion, not cumulative of officer's testimony elicited primarily for the purpose of laying the foundation for admission of the videotapes). We find no abuse of discretion in the trial court's ruling.

The defendant's principal argument on appeal is that the police conduct in this case was so outrageous as to shock the judicial conscience and require reversal of his conviction. We find this contention wholly without merit.

---

[4]Brooks argues in his brief that, "[W]hen there is competent testimony, as there is in this instance from at least two officers, the video tapes no longer are relevant but instead become highly prejudicial to the defendant because you are just replaying and replaying these highly prejudicial tapes of the defendant."

Judge Ishikawa heard an entire day of testimony on the issue and concluded,

> THE COURT: . . . Well, at this point in time, I don't even think I need any argument, really, because I don't think that there has been any evidence from the usual course of any criminal felony case tending to prove the basic premise you are promoting, Mr. Prince, that there was a—it shocks the conscience in the manner in which Mr. Brooks was involved, and how the Seattle Police Department operated. . . .
>
> . . .
>
> At this time, I see that there is no evidence whatsoever to even justify the basis of your motion to dismiss the charges on a due process, shocked conscience basis. Let's put it that way.

We agree. The defendant's claims of danger to the public are merely speculative. His contention that he was enticed to commit the burglaries because of the ease with which stolen property could be fenced relates to the defense of entrapment. The jury was properly instructed on entrapment and clearly rejected the defense as to those counts wherein it reached guilty verdicts. Regarding the defendant's policy arguments, we have previously recognized that such matters are properly addressed to the legislature. *State v. Emerson*, 10 Wn. App. 235, 242–43, 517 P.2d 245 (1973) (Williams, J., concurring specially). This Project was federally funded. It involved cooperation between the Seattle Police Department and agents of the United States Customs Service. The King County Prosecuting Attorney's Office was also involved in the Project. We, as a judicial body, are not prepared to question the wisdom or social utility of participation in such a venture, particularly upon the record before us which contains no evidence of police conduct exceeding recognized legal limits.

The defendant's sixth assignment of error relates to the trial court's refusal to grant a new trial based upon inconsistent jury verdicts. He argues that because the jury failed to reach verdicts on 3 of the 17 counts, it must have found that as to those 3 counts he had been entrapped. He

concludes that the guilty verdicts on the remaining counts are inconsistent. Again, the defendant cites no authority to support this assignment of error. On its merits, the contention is not well taken. Each count in the information charged a separate offense. Although the charges were related in the limited sense that they arose out of the sting operation, the crimes charged were composed of different elements. The verdicts were therefore not inconsistent. *State v. O'Neil*, 24 Wn.2d 802, 167 P.2d 471 (1946).

The defendant's last argument is that he was entitled to an instruction placing the burden on the State to prove the absence of entrapment beyond a reasonable doubt. However, we see no reason to retreat from our decision in *State v. Ziegler*, 19 Wn. App. 119, 575 P.2d 723 (1978), where we rejected the same contention made by the defendant here.

Reversed as to counts 18 and 19; affirmed as to all remaining counts.

CALLOW and CORBETT, JJ., concur.

Reconsideration denied September 22, 1981.

Review denied by Supreme Court December 3, 1981.