**STATE of Tennessee, Appellee,**

v.

**Raymond Eugene TEAGUE, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 31, 1983.

Edward E. Davis, Robert J. Batson, Jr., Chattanooga, for appellant.

Wayne E. Uhl, Asst. Atty. Gen., William M. Leech, Jr., Atty. Gen., Nashville, for appellee.

## OPINION

COOPER, Justice.

Appellant, Raymond Eugene Teague, has appealed his conviction of murder in the first degree, and the sentence of death. On reviewing the record, we find no merit in any of the several assignments of error directed to the guilt phase of the trial. We are of the opinion, however, that the admission in evidence of a warrant charging appellant with conspiracy to commit murder was error which requires a reversal of the penalty of death and a remand of the cause for a sentencing hearing.

The victim was Terri Teague, who was formerly married to the appellant. Mrs. Teague's body was found at about 10:30 a.m., on April 4, 1980, floating face down in the bathtub in her apartment on Towne Hills Drive in Chattanooga, Tennessee. An autopsy revealed that within an hour before her death, Mrs. Teague had sustained a blow to her left temple of sufficient force to "addle" her, and which could have caused her to be unconscious.

Mrs. Teague, who lived alone, was very security conscious. In addition to the regular door locks, her front door had a deadbolt lock and a safety chain, and she had had a peephole installed. She kept a heavy piece of furniture pushed against the back door, to make entry through that door more difficult. At the time her body was discovered, the front door was secured only by the regular door locks. A pane of glass in the back door had been broken and pieces of glass were on the kitchen floor, indicating that the blow that broke the glass came from outside. Further, one end of the piece of furniture normally against the back door had been moved away from the door.

The detective team assigned to investigate Mrs. Teague's death knew her from another homicide investigation. In July of 1979, John Mark Edmonds was killed, evidently by shots fired by Mrs. Teague. The circumstances of that killing are not shown in the record. However, the record does show that Mrs. Teague agreed to help the police in their investigation of the homicide

by concealing a transmitter on her person and recording conversations with appellant relative to the death of Edmonds. Subsequently, appellant was charged in a two-count indictment with the murder of Edmonds, and with the moving, inciting, counselling, hiring, and commanding or procuring Teresa Teague to murder Edmonds. Mrs. Teague was scheduled to be a key witness for the prosecution. After the indictment was returned, appellant found out about the taped conversations and obtained transcripts of the tapings. Appellant admitted in the trial of this case that in one of the taped conversations, he had told Mrs. Teague that if she died she would die in a bathtub.[1]

The detectives also learned from police records that within the time frame of Mrs. Teague's death, appellant had been arrested on Town Hills Drive at a point almost in front of Mrs. Teague's apartment. Officer Chandler, who made the arrest, testified that he had been dispatched to the Towne Hills Drive area to investigate the occupants of a truck seen in the subdivision on several occasions in the early morning hours of April 4, 1980. The officer stopped the truck by flashing his "blue" police light. Marshall Skinner was driving the truck, Jimmy Cook was seated in the middle and appellant was on the passenger side. The officer asked Skinner for his driver's license. As Skinner was getting it, the officer heard the noise of metal striking metal in the cab of the truck, and saw appellant bending over. The officer drew his revolver, ran to the back of the truck, ordered the men out and had them place their hands upon the tailgate of the truck. Officer Chandler then looked into the truck and saw a loaded and cocked .45 caliber automatic pistol on the floor at the point where appellant had been seated. On appellant admitting the pistol was his, he was arrested and charged with unlawfully carrying a pistol with the intent to go armed.

While these events were taking place, a second officer, Fred Layne, arrived at the scene and assisted in the arrest and in filling out field interrogation forms. The officers testified that no search was made of the truck at the scene of the arrest, but each noticed a brown plastic garbage bag, apparently filled with clothing, sitting on the floor of the truck cab.

The officers also testified that in conversation at the scene of the arrest, Officer Chandler mentioned that his report of the incident would result in the three men being suspects in the event a burglary or murder later was reported to have occurred in the area. On hearing this, appellant fainted and collapsed on the ground. Appellant's explanation was that he was highly nervous at having been arrested at the point of a gun.

Appellant was transported to and was incarcerated in the Hamilton County jail. Within a few hours and before the body of Mrs. Teague was discovered, Jimmy Cook arranged to have appellant released on bond.

After learning of the arrest of appellant on the gun charge, and where it occurred, the detectives immediately began looking for the appellant, Cook, and Skinner. Jimmy Cook was located almost immediately and made a statement to the detectives. Appellant was arrested and charged with murder soon afterward. Marshall Skinner came to police headquarters two days later to make his statement. Skinner then took the police to the place where he had thrown a brown plastic garbage bag, which Skinner stated had been brought to the truck by appellant.

The bag contained a yellow sheet matching the one found in the washing machine in Terri Teague's apartment. Hair on the sheet was found to be microscopically identical to Mrs. Teague's hair. A blouse and skirt of Mrs. Teague's were also in the bag. Several shards of glass found in the bag matched the breakage pattern of the bro-

---

1. There is evidence that thereafter Mrs. Teague would not take a bath, but limited her bathing to only a shower.

ken pane of glass in the back door and carpet fibers found in the bag matched samples taken from the Teague apartment. The bag also contained a letter from the District Attorney to Mrs. Teague advising her that the trial of appellant on the charge of murdering Edmonds had been passed to a later date. A pair of gloves in the bag were identified as belonging to appellant and having been worn by him on the night the murder of Mrs. Teague occurred.

In their statements, and at trial, both Cook and Skinner testified that appellant had directed them into the subdivision where Mrs. Teague lived and had pointed out her apartment. They also testified that on the first two trips through the subdivision, the appellant had told them not to stop as the lights were on in the Teague apartment. On two occasions, after the lights in the apartment were out, they let appellant out of the truck near the apartment and returned to pick him up at the times specified by appellant. On the second occasion, they saw appellant on the porch of the Teague apartment. The door to the apartment was open, and appellant had a brown plastic garbage bag in his hand. According to them, appellant brought the bag to the truck. They further testified that as the truck started to move away from the vicinity of the Teague apartment, a police car came over the crest of the hill with its "blue lights" flashing. Skinner testified that when Teague saw the police car, he said, "Oh, shit. I kilt that bitch." Cook testified that as appellant got into the truck, he said that he had killed Terri. Cook also testified that about a month and a half before Mrs. Teague's death, appellant had expressed the belief that if Terri were "out of the way" the Edmonds' murder case would never go to court, and that on the night of Terri's death, appellant had said "he was going to kill Terri."

Appellant insists that the above evidence is insufficient to prove either the "corpus delicti" or the criminal agency of appellant beyond a reasonable doubt. We disagree. "Corpus delicti" may be established by a confession, if supported by other direct or circumstantial evidence consistent with the confession. *Barksdale v. State,* 200 Tenn. 322, 326, 292 S.W.2d 193, 195 (1956). Here the state presented evidence that forcible entry was made into Terri Teague's apartment on the night of her death. She drowned in a full bathtub despite the fact she never took baths in a tub. The sheet from her bed, clothing worn by her, shards of glass from the back door, and correspondence addressed to Mrs. Teague were removed from the apartment on the night of her death. These are the same items found in the plastic garbage bag. In addition, there is evidence that appellant had the motive and opportunity to kill Terri Teague. He told her in a taped conversation that if she died, it would be in a bathtub. He expressed the opinion to Cook that his indictment for murder of Mark Edmonds would never go to court if Terri were out of the way. On the night of Terri's death, appellant told Cook that he was going to kill Terri. After he left Terri's apartment, he told both Skinner and Cook that he had killed her. We think this evidence is sufficient for any rational jury to find that both the "corpus delicti" and the criminal agency of the appellant were proven beyond a reasonable doubt and justifies the jury finding appellant guilty of murder in the first degree.

In a separate assignment of error, the appellant raises the specter that the state withheld evidence material to the issue of "corpus delicti." We agree with appellant that if the state did this and the evidence was material either to guilt or punishment, it would be a violation of due process and the conviction of appellant would have to be reversed. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). But we find no evidence in the record that indicates the state suppressed evidence, material or otherwise. The state complied with the order of the trial judge to furnish counsel for appellant with "all information of whatever source, form or nature, which would or might tend to exculpate the [appellant]." The summary of the medical examiner indi-

cated that he had sent blood samples of the deceased to the Georgia Crime Laboratory for testing. This fact was verified by the medical examiner in testifying in this case. The medical examiner also testified that he had not received any test results from the Georgia Crime Laboratory, and that such tests were not necessary to his determination that Terri Teague's death was due to "drowning in a bathtub and aspiration of vomitus." Further, the record shows that no member of the prosecution team possessed or was aware of any blood test results. Absent some indication that the tests were run and that a report exists, in our opinion the state cannot be charged with the suppression of evidence and the concomitant denial of appellant's due process rights.

■ In a general assignment of error, the appellant insists that he was denied a fair trial "by the use of certain tactics and procedures of the prosecution." In the course of the discussion of the assignment, appellant complains of reference by the prosecution, in its opening and closing statements, to the indictment of appellant for the murder of John Mark Edmonds and the fact that Teresa Teague was to be a key witness for the prosecution. Appellant also complains of the admission in evidence of the indictment and of the fact that Teresa Teague had taped conversations with appellant relative to the Edmonds murder. We see no error in either of these acts of the prosecution. The evidence in question was relevant to show appellant's motive for the killing of Terri Teague. It also was relevant to the issue of premeditation and malice, both being elements of first degree murder. As is pointed out in *Bunch v. State,* 605 S.W.2d 227, 229 (Tenn.1980),

> [I]f evidence that the defendant has committed a crime separate and distinct from the one on trial, *is relevant* to some matter actually in issue in the case on trial and if its probative value as evidence of such matter in issue is not outweighed by its prejudicial effect upon the defendant, then such evidence may be properly admitted.

■ In addition, appellant complains of the prosecution's version, given in argument, of how the murder occurred. Further, appellant insists that "the State deliberately called its witnesses to the stand in a way calculated to prejudice the jury against the [appellant] because of the State's recognition that they could not prove the corpus delicti," and that the action by the state was a "facet of a planned, deliberate effort by the State to paint a false picture of murder in the minds of the jurors by arguments and statements to the jury, known to be false when made." We see no basis in the record for these charges. As heretofore noted, we are of the opinion that statements and arguments made by the prosecution to the jury were in accord with the evidence. We are also of the opinion that witnesses were called by the state in logical order, and that the "corpus delicti" was proven beyond a reasonable doubt as was the guilt of appellant.

■ Appellant also insists the trial judge committed prejudicial error in permitting the jury to view a videotape of Terri Teague's apartment and of the scene where the body of Terri Teague was found. Appellant argues that the still pictures of the apartment and the body were adequate and that the probative value of the videotape was "far outweighed by it's prejudicial effect."

The admissibility of authentic, relevant photographs, or a videotape of a crime scene or victim, is within the sound discretion of the trial judge, and his ruling on the admissibility of such evidence will not be overturned without a clear showing of abuse of discretion. *See State v. Banks,* 564 S.W.2d 947 (Tenn.1978); *Stamper v. Commonwealth,* 220 Va. 260, 257 S.E.2d 808, 815–816 (1979), cert. denied 445 U.S. 972, 100 S.Ct. 1666, 64 L.Ed.2d 249 (1980); *State v. Brooks,* 30 Wash.App. 280, 633 P.2d 1345, 1348 (1981). We see no abuse of discretion in the admission of the videotape into evidence in this case.

The video tape has the added advantage of showing the layout of the apartment, the size of the rooms, the positions of the door-

ways, the placement of furniture and the general state of the murder scene at the time Terri Teague's body was discovered, and doing it in a continuous display seen by all the jurors at one time. The videotape also gives the jurors a better view of the exact position of the body as the police officers found it, which in this case is important to the determination of the "corpus delicti."

■ Further, appellant contends that he was prejudiced by the trial judge's refusal to sever the trial of the murder charge from the trial of the weapons charge. Appellant argues that the charges were not in any way similar, related or connected, and that the only purpose of consolidation was to get the testimony of the arresting officer, Don Chandler, into evidence. In our opinion the basis for this argument is unsound. The testimony of Officer Chandler would have been admissible in the trial of the murder charge even if the weapons charge had not been tried at the same time, as it placed appellant in the vicinity of the apartment where Terri Teague was killed and within the time frame of her death. All circumstances attendant Officer Chandler's contact with the appellant in the early morning hours of April 4, 1980, were relevant to the murder trial, including the fact that he had arrested appellant on a weapons charge on the street almost directly in front of Terri Teague's apartment. This being so, we see no abuse of discretion or undue prejudice to the appellant as the result of the trial judge's decision to try the murder charge and the weapon's charge at the same time.

■ In the remaining issue directed to the guilt phase of the trial, appellant insists that the state withheld evidence from the jury of a "deal" with Skinner to reduce charges pending against him in exchange for his testimony against appellant, and that this violated appellant's right to due process. The record shows that several months after the murder trial, Skinner was allowed to plead to a reduced charge in cases pending against him. Appellant reasons from this that it was the consequence of a deal Skinner made with the prosecution

to get the appellant. This is not borne out by the record. The jury in this case was apprised of the charges pending against Skinner. Detective Bryan, Jimmy Cook, and Marshall Skinner all testified that neither Cook nor Skinner was made promises in exchange for giving statements to the police or their trial testimony. When the issue came up again in argument of the amended motion for new trial, the prosecutor confirmed this in open court. Furthermore, it is interesting to note that after appellant was convicted, several adversary motions were filed in the cases pending against Skinner, indicating that the state was dealing with Skinner at arms length. We agree with the state that "this evidence hardly rises to a showing of 'deliberate deception of a court and jurors' denying due process." *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Without some proof that deals were made, it cannot be said that due process was denied. This issue is without merit.

In the sentencing hearing held before the same jury that determined appellant's guilt, in urging that the jury return the death penalty, the state relied on two statutory aggravating circumstances: (1) The murder was especially heinous, atrocious, or cruel in that it involved torture or depravity of mind, and (2) the murder was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or prosecution of the appellant. *See* T.C.A. 39–2404(i). In its effort to prove these aggravating circumstances, the state "stood" on the evidence introduced in the guilt phase of the trial and filed, over the objection of the appellant, a state warrant issued on June 1, 1978, charging appellant with "conspir[ing] with John Edmonds and Dale Edmonds to murder James Lowe, Jr." The warrant showed on its face that it was dismissed on the recommendation of the state on June 13, 1978.

The appellant called several witnesses who testified, in substance, that appellant was a good father who had never exhibited any animosity toward either Terri Teague or the children, and who had on numerous

occasions been helpful to Terri in solving some of her personal problems. Several of these witnesses were questioned extensively concerning the circumstances attendant the issuance of the warrant and the reason for the recommendation by the state that the warrant be dismissed.

On considering the evidence before it, the jury found that the state had established the two statutory aggravating circumstances beyond a reasonable doubt, and that the aggravating circumstances were not outweighed by any mitigating circumstance or circumstances, and returned a sentence of death by electrocution.

Appellant challenges the sufficiency of the evidence that formed the basis of the jury's findings, and specifically questions the admissibility of the warrant issued on June 1, 1978, charging the appellant with conspiracy to commit murder.

 In the sentencing phase of a first degree murder trial evidence of "any matter that the court deems relevant to the punishment" is admissible. *See* T.C.A. § 39–2404(c). Evidence is relevant to the punishment only if it is relevant to a statutory aggravating circumstance or to a mitigating factor raised by the defendant. *Cozzolino v. State,* 584 S.W.2d 765 (Tenn.1979).

 In our opinion, the admission of the warrant into evidence over the objection of the appellant was error. The fact that appellant was arrested in 1978 on a charge of conspiracy to commit murder, in our opinion, is not relevant to either of the statutory aggravating circumstances sought to be proven by the state, or to a mitigating factor raised by appellant. Furthermore, since the state dismissed the charge against appellant for lack of evidence, without even asking for a probable cause hearing, the warrant could have no probative value. We have no certain way of knowing whether the jury would have sentenced appellant to death if they had not considered evidence that appellant had been arrested in 1978 on a serious felony charge. It does appear to us, however, that some prejudice, of necessity, resulted from the jury considering the warrant and the subsequent arrest of appellant. As heretofore noted in the guilt phase of the trial, the state introduced evidence tending to show that the motive for the killing of Teresa Teague was to keep her from testifying against appellant on a charge that he had murdered John Mark Edmonds. A coconspirator named in the improperly admitted 1978 warrant was John Edmonds. The probability of prejudice resulting from the consideration of the improperly admitted evidence, in our opinion requires that the sentence of death be reversed and the cause be remanded to the trial court for a sentencing hearing.

Appellant also insists that T.C.A. § 39–2404(g) is unconstitutional in that it makes the death penalty mandatory under certain circumstances, and gives the jury no discretion in questioning whether its earlier verdict finding the appellant guilty of murder in the first degree is correct. Similar attacks on the constitutionality of the sentencing phase of the Tennessee Death Penalty Act have been made in other cases and have been found to be without merit. *See State v. Dicks,* 615 S.W.2d 126 (Tenn.1981), *cert. denied,* 454 U.S. 933, 102 S.Ct. 431, 70 L.Ed.2d 240; *Houston v. State,* 593 S.W.2d 267 (Tenn.1980), *cert. denied,* 449 U.S. 891, 101 S.Ct. 251, 66 L.Ed.2d 117.

The conviction of appellant for murder in the first degree is affirmed. The sentence of death imposed on the murder conviction is reversed, and the cause is remanded to the trial court for a sentencing hearing. Costs incident to the appeal are adjudged against the appellee; all other costs will be assessed in the trial court.

FONES, C.J., and HARBISON and DROWOTA, JJ., concur.

BROCK, J., concurs in part and dissents in part.

BROCK, Justice, concurring in part and dissenting in part.

With respect to the constitutionality of the death penalty, I adhere to the views expressed in my dissenting opinion in *State v. Dicks,* Tenn., 615 S.W.2d 126, 132 (1981);

in all other respects I concur in the opinion of the Court.