**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**MAY 1999 SESSION**

**FILED**

**August 19, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | |
| | **)** | **C.C.A. NO. 02C01-9805-CR-00142** |
| Appellee, | **)** | |
| | **)** | **SHELBY COUNTY** |
| VS. | **)** | |
| | **)** | **HON. ARTHUR T. BENNETT,** |
| **DERRICK SAYLES,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Second-Degree Murder) |

**D I S S E N T**

I respectfully dissent because I do not believe the defendant has shown reversible error with regard to the trial court's refusal to allow him to question the prosecutor and/or the witness Callicutt about whether promises were made in exchange for Callicutt's testimony against the defendant.

Contrary to the defendant's assertions, I do not believe his due process rights were violated under Giglio v. United States, a case the defendant claims is identical to the situation here. In that case, the State allowed the defendant's co-conspirator to testify falsely that he did not have an agreement with the State in exchange for his testimony. Giglio, 405 U.S. at 151-53. Because the State secured a conviction based in part upon false testimony regarding the co-conspirator's credibility, the defendant's due process rights were violated and he was entitled to a new trial. Id. at 153-55. Here, however, there is no evidence that a government witness falsely represented to the jury

that he was not promised anything in exchange for his testimony. One of the prosecutors specifically stated on the record that no leniency had been promised to the witness, and nothing in the record contradicted that representation. See State v. Williams, 690 S.W.2d 517, 525 (Tenn. 1985) (prosecutor's uncontroverted assertion was sufficient to support the conclusion there was no agreement between the State and its witness, despite the defendant's "suspicion" there was). Thus, as this Court has concluded in similar cases, while Callicutt's decision to testify may appear linked to the State's bond recommendation, nothing in the record proves the defendant's claim that an agreement between Callicutt and the State actually existed and in turn, the defendant has failed to show a violation of due process. Williams, 690 S.W.2d at 524-25 (no due process violation where the prosecutor represented there was no agreement with the witness and no evidence supported the defendant's claim there was an agreement, even though after the defendant's trial, the witnesses negotiated a plea bargain in exchange for the minimum sentence); State v. Teague, 645 S.W.2d 392 (Tenn. 1983)(no due process violation where there was no evidence of an agreement, only the defendant's insistence that there must have been an agreement because several months after his trial, the State allowed the witness to plead to reduced charges in cases pending against him).

In my view, the majority opinion improperly redefines this issue for the defendant by concluding that the defendant is entitled to a new trial because defense counsel was not allowed to pursue his offer of proof. Only in passing does the defendant even suggest that the trial court erred in not allowing him to proffer evidence, and the defendant offers no argument or case citation for this assertion. See Rules of the Court of Criminal Appeals of Tennessee 10(b)(issues not supported by argument and authoritative citations are waived). Even though the defendant apparently had the

2

opportunity to present additional proof on his motion for new trial, he did not, suggesting that there is no further proof to pursue. In fact, it is the defendant's position that the proof in the record is sufficient to evidence an agreement between the State and Callicutt.

However, I disagree with the majority opinion's conclusion that the trial court committed reversible error by not allowing the defendant to offer proof because the defense request itself and the need for a proffer was unclear. If, for example, the defense had clearly requested the record to reflect what, if anything, the prosecutors and Callicutt had discussed during the recess and/or what prompted Callicutt to decide to testify against the defendant, then perhaps reversible error would have resulted. Here, however, the request was merely to offer proof that the State had recommended a reduced bond. Not only did the record already reflect this, but nothing in the record supported the speculation that the bond recommendation was in any way related to Callicutt's testimony or willingness to testify. Under these circumstances, I find no reversible error.

It is bothersome that the majority is remanding this case to provide the defendant with an opportunity to further develop proof he will not, in all likelihood, present to the jury. As the majority opinion notes, it was probably a tactical decision to not cross-examine Callicutt about why he decided to testify and to not ask to recall Callicutt to the stand to question him about the bond reduction. Callicutt's credibility was seriously questioned at trial without evidence of any deal or agreement, so there would be little advantage to further attempts to undermine his credibility, even if there had in fact been an agreement underlying the bond recommendation. Yet revealing the recommendation and reduction to the jury would also reveal the defendant's threats against Callicutt, which

3

would cast the defendant in a very unfavorable light.  Given the heavy disadvantages and questionable advantages, the defendant would wisely not opt not to pursue this in front of a jury.  Reversal on this issue, then, seems unwarranted.

On this issue, I would affirm.  In all other respects, I concur with the majority's opinion.

_____
JOHN H. PEAY, Judge

4