# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 3, 2006 Session

## STATE OF TENNESSEE v. STEPHEN D. LAMB

**Appeal from the Circuit Court for Madison County**
**No. 05-309     Roger A. Page, Judge**

---

**No. W2005-02953-CCA-R3-CD  - Filed December 18, 2006**

---

The Appellant, Stephen D. Lamb, was convicted by a Madison County jury of burglary, a Class D felony, and the misdemeanor offenses of possession of burglary tools and evading arrest. Lamb received an eight-year sentence for burglary and an eleven month and twenty-nine day sentence for each misdemeanor conviction. The misdemeanor sentences were ordered to run concurrently with each other but consecutively to the felony conviction. On appeal, Lamb raises the following issues for our review: (1) whether the trial court erred in failing to suppress certain items found in Lamb's possession at the time of his arrest; (2) whether the trial court erred in admitting a police videotape; (3) whether the evidence is sufficient to support his convictions; and (4) whether Lamb's sentence for burglary is excessive and whether the imposition of consecutive sentences is warranted. After review, the judgments of conviction and resulting sentences are affirmed.

### Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Danny R. Ellis, Jackson, Tennessee, for the Appellant, Stephen D. Lamb.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and James Thompson, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

Shortly before midnight on January 23, 2005, Larry Turpin, the owner of Turpin's Wrecker and Amoco in Madison County, received a call from the company that monitors his security system notifying him that the burglar alarm at his business had been activated. Turpin instructed the security company to call the sheriff's department, and Turpin called Alan Kopetzky, a manager of a nearby truck stop. Kopetzky drove to Turpin's business and shined his headlights on the building. He

observed that a large window at the front of the building was broken. Then Kopetzky saw a man exit the building through the window, carrying what appeared to be a tire iron. The man was wearing blue jeans, a dark blue or black sweatshirt, and his head was covered with either a hood or stocking cap. Kopetzky watched as the man ran from the front of the building and "ducked around the corner into the woods." Approximately two minutes later, Madison County Sheriff's Deputy Chris Long arrived at the scene, followed by other law enforcement officers. Kopetzky informed Deputy Long of the description of the burglar and the direction of his flight, and Long gave pursuit. Minutes later, a police helicopter, which was in the area, began assisting in the pursuit. The helicopter was equipped with a thermal infrared camera and a spotlight.[1]

Information from the aerial surveillance indicated the image of a man running from the vicinity of the burglarized building, and that the person was about to cross the interstate. Deputy Long returned to his patrol car and drove across the interstate. Through the use of the spotlight and following "play by play" instructions from the helicopter, the burglar, later identified as the Appellant, was apprehended in the wooded area. During the pursuit, the Appellant was ordered to stop on at least five occasions; however, he continued to run. Upon capture, the Appellant was wearing blue jeans, a dark jacket, and "western style" cowboy boots. A toboggan cap with face mask, which was discarded by the Appellant, was located three feet away. The Appellant was carrying a crowbar, a flashlight, and a large screwdriver. Investigation of the burglarized business revealed that the cash register door was open, the cover of the ATM machine had been pried open, and the safe was exposed; however, nothing was taken from the building.

At trial, the Appellant testified that he was not the person who was observed fleeing through the broken front window of Turpin's Wrecker Service. He related that he had stopped that night at the truck stop across the interstate from the burglarized building only because the brakes on his car were "dragging." He stated he went for a walk in the woods to let his brakes cool off. The Appellant was unable to explain why he carried a crowbar and a large screwdriver with him during the walk. Based upon the proof, the Appellant was convicted of burglary, possession of burglary tools, and evading arrest.

**Analysis**

**I. Motion to Suppress**

Before trial, the Appellant filed a motion to suppress the burglary tools which were seized when the Appellant was arrested, specifically a crowbar, a screwdriver, and a flashlight. The Appellant asserted that the officers did not have probable cause to arrest him; therefore, his arrest was unlawful, and any evidence was seized in violation of the Fourth, Fifth, and Fourteenth

---

[1]At trial, Sergeant Stanfield, the helicopter pilot, explained that the thermal infrared camera picks up "heat signatures" which permits the operator to see warm images in low light conditions. The images are then simultaneously recorded on videotape.

Amendments to the United States Constitution and Article I, Sections 7, 8, and 9 of the Tennessee Constitution.

The proof at the suppression hearing established the following: (1) Kopetzky described the burglar fleeing the building as a white man who was wearing a dark-colored sweatshirt, a hood over his head, and Texas-style cowboy boots, carrying a tire iron; (2) the police infrared camera in the helicopter picked up a heat image of a man running from the area, and continuous instructions were relayed to Long during the course of the man's flight, which ultimately resulted in his apprehension; (3) after being ordered to stop, the man continued to flee from the police; and (4) Kopetzky's description of the burglar's clothing matched the man's clothing "to a T," and burglary tools were found in the person's possession. The trial court found "[t]he [Appellant's] arrest was with probable cause, the items lawfully seized, and the [Appellant's] motion is without merit. . . ."

In reviewing the trial court's denial of a motion to suppress, we accept the trial court's findings of fact unless the evidence preponderates otherwise. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997). However, the law as applied to those facts is subject to *de novo* review. *Id*. The defendant bears the burden of demonstrating that the evidence preponderates against the trial court's findings. *State v. Odom*, 928 S.W.2d 18, 22-23 (Tenn. 1996).

As a general principle, warrantless searches are *per se* unreasonable under the Fourth Amendment of the United States Constitution and article I, section 7 of the Tennessee Constitution. However, there are a few specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514 (1967); *State v. Tyler*, 598 S.W.2d 798, 801 (Tenn. Crim. App. 1980). The State must establish by a preponderance of the evidence that the search falls within one of the narrowly drawn exceptions to the warrant requirement in order for the fruits of a warrantless arrest to be admissible as evidence. *State v. Shaw*, 603 S.W.2d 741, 742 (Tenn. Crim. App. 1980). A search incident to a valid arrest is such an exception. *United States v. Robinson*, 414 U.S. 218, 235, 94 S. Ct. 467, 477 (1973).

An officer may make a warrantless arrest "[w]hen a felony has in fact been committed, and the officer has reasonable cause for believing the person arrested to have committed it." T.C.A. § 40-7-103(a)(3) (2003). Simply stated, the officer must have "probable cause to believe the person to be arrested has committed the crime." *State v. Lawrence*, 154 S.W.3d 71, 75 (Tenn. 2005) (citing *State v. Lewis*, 36 S.W.3d 88, 98 (Tenn. Crim. App. 2000). Probable cause to arrest exists if the facts and circumstances within an officer's knowledge were "'sufficient to warrant a prudent [person] in believing that the [individual] had committed or was committing an offense.'" *State v. Bridges*, 963 S.W.2d 487, 491 (Tenn. 1997) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S. Ct. 223, 225 (1964); *State v. Melson*, 638 S.W.2d 342, 350-51 (Tenn. 1982)). The existence of probable cause is a question of probabilities, not technicalities. *Melson*, 638 S.W.2d at 351. Probable cause must be more than a mere suspicion. *Id*. at 350. After review, we conclude that the totality of the circumstances was sufficient in nature to warrant a prudent person to believe that the Appellant had committed the felony offense of burglary. Accordingly, the Appellant's motion to suppress was properly denied.

## II.  Admission of Videotape

The Appellant asserts the trial court should have excluded the videotape of the thermal images taken during the pursuit of the Appellant.  The State asserts that the Appellant waived this issue because the videotape is not included in the record on appeal.  *See* Tenn. R. App. P. 24(b).  The failure to prepare an adequate record ordinarily results in waiver of that issue.  *Thompson v. State*, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997).

The Appellant objected to the admission of the videotape on the ground that it was cumulative of the deputies' testimony regarding their chase and capture of the Appellant.  The State asserted the videotape was relevant.  One of the Appellant's theories of defense was that the police did not investigate the possibility that the burglar came from one of the businesses near Turpin's Wrecker and Amoco.  The videotape was probative because it showed the Appellant's proximity to the crime scene when flight was initiated, established the elements of evading arrest, and corroborated police testimony.

The admissibility of relevant videotapes is within the sound discretion of the trial court, and its ruling on the admissibility of such evidence will not be overturned without a clear showing of abuse of discretion.  *State v. Van Tran*, 864 S.W.2d 465, 477 (Tenn. 1993); *State v. Teague*, 645 S.W.2d 392, 397 (Tenn. 1983).  We conclude that the trial court properly overruled the Appellant's objection.

## III.  Sufficiency of the Evidence

The Appellant also contends there was insufficient evidence to support his convictions for burglary, possession of burglary tools, and evading arrest.  Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State.  *See State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978).  Questions about witness credibility is resolved by the jury.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

The Appellant asserts that proof of burglary is lacking because Kopetzky could not identify him as the burglar.  He also argues that the deputies did not find any property from Turpin's business in his possession.  With regard to his conviction for possession of burglary tools, he emphasizes that none of the witnesses testified that they saw him use the tools to commit the burglary.  Finally, he asserts that his conviction for evading arrest is legally insufficient because he did not know the officers were attempting to effect an arrest.

The offense of burglary, as applied to the facts of this case, is committed when a person enters a building, without the effective consent of the property owner, and commits or attempts to commit a theft. T.C.A. § 39-14-402 (2003). The offense of possession of burglary tools is committed when a person possesses a tool or implement with intent to use the same, or allow the same to be used, to commit a burglary. T.C.A. § 39-14-701 (2003). The proof at trial in this case established that a person matching the Appellant's description was observed exiting the business through the broken store front window, that the cash drawer was open, and that the cover of the ATM was pried open and, when the Appellant was apprehended, following a pursuit from the general vicinity of the burglarized building, he was carrying a crowbar, a screwdriver, and a flashlight.

The offense of evading arrest is committed when a person intentionally flees from a person he knows is a law enforcement officer and knows the officer is attempting to arrest him. T.C.A. § 39-16-603 (2003). With regard to this offense, the proof established that the Appellant disregarded repeated orders by the deputies to stop. Moreover, he struggled with them when they tried to apprehend him.

After review, we conclude that the evidence was legally sufficient to support a verdict of guilty on all charges. This issue is without merit.

## IV. Sentencing

The Appellant was convicted of burglary, a Class D felony, and the misdemeanor offense of possession of burglary tools and evading arrest. The Appellant argues that his sentence for burglary is excessive because the trial court exaggerated the weight for an enhancement factor and minimized the weight for a mitigating factor. Also, he asserts the trial court erred by ordering consecutive sentences for his burglary and misdemeanor sentences. The Appellant asks this court to remand his case for a new sentencing hearing.

In accordance with the sentencing scheme in effect at the time of these convictions, the trial court was required to start at the minimum sentence in the range, then "enhance the sentence within the range as appropriate for the enhancement factors, then reduce the sentence as appropriate for the mitigating factors." T.C.A. § 40-35-210(e) (2003). Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2003).[2] In conducting its *de novo* review, this court considers the following factors: (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties

_____

[2]We note that on June 7, 2005, the General Assembly amended Tennessee Code Annotated sections 40-35-102, -210, and -401. *See* 2005 Tenn. Pub. Acts ch. 353 §§ 1, 6, 8. However, the amended code sections are inapplicable to the Appellant's appeal.

on enhancement and mitigating factors; (6) any statement by the Appellant in his own behalf; and (7) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210 (2003); *see also State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the Appellant to demonstrate the impropriety of a sentence. T.C.A. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will afford the trial court's determinations a presumption of correctness. T.C.A. § 40-35-401(d); *Ashby*, 823 S.W.2d at 169.

### A. Length of Sentence

The Appellant stipulated that he qualified as a Range II, multiple offender, for sentencing purposes. As such, his sentence range for burglary is four to eight years. *See* T.C.A. §§ 39-14-402(c), 40-35-112(b)(4) (2003).

In arriving at a sentence of eight years, the trial court focused primarily upon enhancement factor (2), a previous history of prior criminal convictions or criminal behavior. *See* T.C.A. § 40-35-114(2) (2003). The trial court found that the Appellant has four prior felony convictions and five prior misdemeanor convictions. The Appellant's prior criminal history from Illinois and Missouri includes convictions for robbery of a financial institution, burglary, receiving stolen property, and numerous theft convictions.

The trial court also considered the mitigating factor that the Appellant's conduct neither caused nor threatened serious bodily injury but found this factor "would have to be considerably weak because there was a situation where serious bodily injury could have happened." *See* T.C.A. § 40-35-113(1) (2003).

Because the record reflects that the trial judge properly applied the principles of sentencing, wide latitude is afforded the trial judge's sentencing determination and broad discretion is given in making that judgment. As our supreme court observed in *State v. Gomez*, 163 W.W.3d 632, 660 (Tenn. 2005), this state's sentencing act "directs the judge to enhance and to mitigate the sentence 'as appropriate' thereby affording to the judge discretion to select an appropriate sentence anywhere within the range." After *de novo* review, we find no error in the trial court's imposition of an eight-year sentence for the crime of burglary.

### B. Consecutive Sentencing

Next, the Appellant contends that the trial court improperly determined that he had an extensive record of criminal activity which would justify imposing consecutive sentences. The trial court ordered the Appellant's two misdemeanor sentences to run concurrently with each other but consecutive to his eight-year burglary sentence.

Consecutive sentencing is guided by Tennessee Code Annotated § 40-35-115(b), which states in pertinent part:

The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

. . . .

(2) The defendant is an offender whose record of criminal activity is extensive . . . .

The trial court ruled as follows:

The only other thing I need to consider is whether or not sentencing should be concurrent or consecutive.

. . . .

[W]e have [convictions] from 1970, 1978, 1980, 1991, 1994 and 1998, which I think are all within the record which shows there is an extensive criminal history here.

I also have to look at whether prior leniency with this Defendant has failed to rehabilitate him, whether or not the length of sentence that the [court] is about to impose is reasonably related to the severity of this offense to make sure it's not greater than deserved.

. . . .

There will be two sentences of eleven twenty-nine. They shall be concurrent with each other but consecutive to the felony. So we have an effective sentence of eight years plus eleven twenty-nine.

We note that nothing in the 1989 Sentencing Act prohibits consideration of prior criminal convictions and conduct for both enhancement and consecutive sentencing purposes as long as those sentences comply with the purposes and principles of the 1989 Act. *State v. Davis*, 825 S.W.2d 109, 113 (Tenn. Crim. App. 1991).

The record supports the trial court's finding of an extensive history of criminal conduct by the Appellant. Additionally, the trial court found that prior leniency has had little affect in deterring the Appellant's unlawful conduct and that the aggregate sentence is reasonably related to the severity of the crimes committed. Accordingly, we conclude that the record supports the imposition of consecutive sentences.

## CONCLUSION

Based upon the foregoing reasons, the Appellant's judgments of conviction and sentences for burglary, possession of burglary tools, and evading arrest are affirmed.

_____
DAVID G. HAYES, JUDGE

-7-