RALPH JAMES LAMAR *v.* STATE OF INDIANA.

[No. 471S106.  Filed May 25, 1972.]

*John G. Bunner*, of Evansville, for appellant.

*Theodore L. Sendak*, Attorney General, *William D. Bucher*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was convicted in a trial by jury of voluntary manslaughter and was sentenced to imprisonment for not less than two nor more than twenty-one years and disfranchised for two years. At the trial, the jury, over objection of the defendant, was permitted to hear a tape recording of his in-custody interrogation by police officers which took place at the police station on the morning following the homicide. The basis for defendant's objection was that a proper foundation for the recording had not been laid.

We have previously held sound recordings to be admissible upon proper identification and authentication. *Sutton et al.* v. *State* (1957), 237 Ind. 305, 145 N. E. 2d 425. In 1970, in the case of *Schmidt* v. *State* (1970), 255 Ind. 443, 265 N. E. 2d 219, rehearing denied March 23, 1971, 256 Ind. 218, 267 N. E. 2d 554, the admissibility of tape recordings was not challenged per se, but it was argued that since the tapes did not

reflect the required *Miranda* warnings, while otherwise reflecting all of the proceedings, the testimony of the police officer that such warnings were given was unbelievable and that the tapes should, therefore, be excluded. We there held that the question of whether or not the required warnings were given was merely one upon which there was a conflict in the evidence and not within the province of this Court to determine. We further held that the inaudibility of small portions of the tapes did not render them inadmissible, since it could be determined that such inaudibility detracted very little, if any, from their total content.

Defendant, relies upon the early case of *Solomon* v. *Edgar* (1955), 92 Ga. App. 207, 88 S. E. 2d 167, wherein the court established the following seven requirements for proper foundation:

(1) It must be shown that the mechanical transcription device was capable of taking testimony.

(2) It must be shown that the operator of the device was competent to operate the device.

(3) The authenticity and correctness of the recording must be established.

(4) It must be shown that changes, additions, or deletions have not been made.

(5) The manner of preservation of the record must be shown.

(6) Speakers must be identified.

(7) It must be shown that the testimony elicited was freely and voluntarily made, without any kind of duress.

Additionally, the defendant asked that we impose an eighth requirement, namely a showing that the mechanical transcription device does not contain matter otherwise not admissible into evidence.

Improved methods of obtaining, preserving and presenting competent evidence, of whatever type, should not only be sanctioned but encouraged as well. In the process, we may not lose sight of fundamental safeguards, but neither should we sacrifice the advantages available to us

through scientific and technological progress to the preservation of traditional rules that may have outlived their usefulness. Our mission is to find the truth. Having recognized that sound recordings can assist us in our quest, how do we obtain maximum benefit from them? Our first concern is with authenticity and correctness. In reviewing the rules laid down in *Solomon* v. *Edgar, supra,* it is immediately apparent that numbers 1, 2, 4, 5 and 6 are merely methods of assuring number 3. If the authenticity and correctness of the transcription can be better or more easily established by other methods, they should be utilized; and if any of the methods formerly utilized are in fact unnecessary, they should no longer be required. *Solomon* v. *Edgar, supra,* was decided in 1955. Without reflecting upon the complexities of tape recording devices or their degree of proficiency at that time, they are in common use today, relatively simple of operation and heavily used and relied upon for innumerable purposes. The tape speaks for itself with regard to its audibility. If it is of adequate quality in this regard, it is immaterial how it became so; and there is no more reason for inquiring into the specifications of the device which recorded it and the capabilities of the person who operated it than there would be to make similar inquiries concerning the camera, the film, developing and printing processes and the technician who produced a photograph before admitting it into evidence. All that is required is a showing that the photograph is an adequate representation of that which is intended to be portrayed. We see no reason for requiring more of a sound recording.

Rules 4 and 5 from *Solomon* v. *Edgar, supra,* are essentially the same, the purpose of requiring the manner of preservation to be shown being to assure that no changes, additions or deletions have been made. These questions may be adequately resolved by conforming to our "chain of custody" rules as laid down in *Graham* v. *State* (1970), 253 Ind. 525, 255 N. E. 2d 652 and modified in *Guthrie* v. *State* (1970), 254 Ind. 356, 260 N. E. 2d 579.

"* * * where as in the case of seized or purchased narcotics, the object offered in evidence has passed out of the possession of the original receiver and into the possession of others, a chain of possession must be established to avoid any claim of substitution, tampering or mistake, and failure to submit such proof may result in the exclusion of the evidence of testimony as to its characteristics." *Graham* v. *State, supra.* 255 N. E. 2d at 656.

"* * * Need the evidence be excluded merely because there is a possibility, regardless of how remote that possibility is, that the evidence may have been tampered with?
* * * * *
* * * Needless to say, extreme care is required in such a situation to insure that the composition of the evidence is not altered." *Guthrie* v. *State, supra.* 260 N. E. 2d at 583.

"* * * The question was simplified in the *Graham* case because there was a clear break in the chain for a six day period. However, where as here, the State has introduced evidence which strongly suggests the exact whereabouts of the evidence, the issue becomes one of probabilities.

Appellee has cited several cases the holdings of which indicate that all possibility of tampering need not be excluded; upon reasonable assurance that the exhibit has passed through the various hands in an undisturbed condition its admission is proper and any remaining doubts go to its weight only. * * * We believe such a rule is well grounded in logic and reason." *Guthrie* v. *State, supra.* 260 N. E. 2d at 584.

As to rule number 6 from *Solomon* v. *Edgar, supra,* we agree that the speakers should be identified. It would be preferable that such identification be determinable from the tape itself, but we do not agree with the defendant's contention that this should be required. Keeping in mind that our concern is with authenticity and correctness, it is readily apparent that it may become necessary or advisable to call one or more of the participants to testify for impeachment purposes; but we do not perceive any other reason why the identity of such persons would be relevant. For this purpose, it would be immaterial how their identity is made known.

*Solomon, supra,* rule number 7, requiring a showing that the testimony elicited was freely and voluntarily made, with-

out any kind of duress, is no different than that of long standing with respect to the introduction of inculpatory statements or writings. We would add to it, of course, the requirement that it be shown that any waiver of the declarant's constitutional rights was voluntarily, knowingly and intelligently made. *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 166 L. Ed. 294. Again, it would be greatly preferred for warnings, acknowledgments and waivers to be reflected upon the tape as well as by the customary documents signed by the declarant and the witnesses. Such procedure gives additional protection to both the accused and the State, and the benefits to be derived therefrom would seem greatly to outweigh the inconvenience, which appears to be but slight.

The defendant's purposed eighth rule, i.e. a showing that the mechanical transcription device does not contain matter otherwise not admissible into evidence, is sound and has been recognized in other jurisdictions. Although it was not determinative of the case, in *State* v. *Meyer* (1951), 37 Wash. 2d 759, 226 P. 2d 204, a case wherein the appellant objected to the introduction into evidence of a typewritten transcription of a sound recorded interview, the court there said "* * * We recognize the seriousness of the question raised with reference to those parts of the interview which made reference to the commission of the offense and to appellants. The court should have required respondent to segregate those parts of the interview and should not have permitted their introduction into evidence. * * *." In *Commonwealth* v. *Bolish* (1955), 381 Pa. 500, 113 A 2d 464, the court after first holding tape recordings to be admissible when a proper foundation is made, reversed because the tape contained material that was inadmissible and prejudicial. A like result was had in *Leeth* v. *State* (1951), 94 Okla. Crim. 61, 230 P. 2d 942. Assuming it to have been mechanically possible, these unfortunate situations could have been averted by a prior editing by the court so that the jury would have heard only the admissible portions, together with a proper

instruction as to why portions had been deleted, that it should not speculate nor make any determination as to the reason for such deletions and that it should draw no inferences therefrom nor consider the fact of such deletions in its deliberations. This, in fact, was done in the case at bar. We are not unaware of numerous cases from other jurisdictions that have held sound recordings admissible, notwithstanding that they included irrelevant matter (*Paulson* v. *Scott* (1951), 260 Wis. 141, 50 N. W. 2d 376), or were partially inaudible, in the absence of evidence to show that anything which was unintelligible was prejudicial to the defendant (*People* v. *Curtis* (1955), 134 Calif. App. 2d 624, 286 P. 2d 446). If the objectionable portions can be eliminated, however, we see no justification for their exposure to the jury. To reconcile such matters, the trial judge, in the absence of the jury, should be furnished with a typewritten transcription of the recording that is to be offered and should also listen to the recording. If it is determined that the recording is generally admissible, a determination can then be made as to how best to insulate the jury from such portions, if any, as may be inadmissible.

Our review of the record discloses that the tape in question meets the requirements hereinbefore set forth. However, in our review, we have listened to the tape through a transcribing device of sufficient quality to reproduce with reasonable fidelity sounds that have been so recorded. The quality in this instance is so poor as to negate whatever probative value it might otherwise have had. By extremely careful listening, under ideal conditions, by replaying portions numerous times and with assistance from the reporter's typewritten transcription, which we presume must have been obtained by the same tedious method, we were able, for the most part, to comprehend the substance of the interview. By a careful comparison of the audio transcription with the reporter's transcription, we note that the written transcript omits considerable portions in addition to those portions which the trial court had ordered stricken. We conclude that the reporter was

unable to hear or understand such portions. It is readily apparent the jury could not have been in any way enlightened by hearing the playback of this recording. We are not so much concerned by the absence of enlightenment, however, as we are by the obvious prospects for confusion that such exposure might engender. If our only criticism of the playback were that it was not enlightening, we would disregard it as harmless error. We are drawn, however, to the comments of the court in *People* v. *Stephens* (1953), 117 Cal. App. 2d 653, 256 P. 2d 1033 where a wire recording of conversations between the defendant and others had been admitted in evidence, but fifty percent of the content of the recording was inaudible and unintelligible. The court, in granting a new trial, commented that "How many different versions of 'what was said' there were in the jury room is a matter of conjecture," and that this state of the evidence might have contributed to a miscarriage of justice. In *Melvin* v. *State* (1950), 210 Miss. 132, 48 So. 2d 856, 49 So. 2d 837, the court held a wire recording properly excluded because of its lack of clarity, while holding that one who listened over a loudspeaker while the recording was made could testify as to what had been heard. The tape recording having been introduced into evidence by the prosecution, it would be altogether logical for the jury to assume that it contained information prejudicial to the defense. Being unable to understand its content when reproduced through the audio device, the jury could only speculate thereon. Although we cannot say with certainty that such speculation lead to Defendant's conviction, we think it placed him in a position of grave peril to which he should not have been subjected. *White* v. *State* (1971), 257 Ind. 64, 272 N. E. 2d 312. We, therefore, substitute for the foundation requirements 1 and 2 set forth in *Solomon* v. *Edgar, supra,* the requirement that the recording be of such clarity as to be intelligible and enlightening to the jury. Otherwise, it serves no beneficial purpose, and the evidence sought to be presented, if competent and material, could be better presented by the

testimony of those who were present and heard. We believe this to be an altogether reasonable requirement. At the outset, we stated that improved methods should be encouraged. There is no merit, however, in the abandonment of traditional methods if improved ones are not available. The development of electronic sound recording equipment has attained such a level of perfection with regard to simplicity of operation, fidelity and economy as to render its use highly desirable and its misuse inexcusable. No interrogation room should be without adequate sound reproduction equipment and a competent operator, as the cost is not great and their proper utilization can be highly beneficial to the administration of criminal justice.

Ordinarily, we would leave such matters to the sound discretion of the trial judge and reverse only for abuse of such discretion, and we have said many times that we will not review the exercise of discretion but will only determine if discretion has been abused. *McFarlan* v. *Fowler Bank City Trust Co.* (1938), 214 Ind. 10, 12 N. E. 2d 752. This distinction, however, is so abstruse as to become almost imaginary. Instances are not infrequent when we are in a position superior to that of the trial judge to decide an issue, the determination of which is entirely discretionary. Such instances occur because of our detachment, our opportunity to view the problem retrospectively, rather than prospectively as the trial judge must, and the time permitted us, for deliberation, which is not available to the trial judge during a trial. In such instances, and we hold this to be one, justice demands that we substitute our judgment, if different from that of the trial judge; and in so doing, we see no necessity to allude to an imaginary abuse by the trial judge, when in reality it is merely a good faith difference of opinion upon an issue viewed from altogether different perspectives.

The admission of a sound recording should be preceded by a foundation disclosing the following:

(1)  That it is authentic and correct;

(2)  That the testimony elicited was freely and voluntarily made, without any kind of duress;

(3)  That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;

(4)  That it does not contain matter otherwise not admissible into evidence; and

(5)  That it is of such clarity as to be intelligible and enlightening to the jury.

It is our opinion that the tape recording in this case did not fulfill the requirement of clarity and intelligibility and that it should not have been admitted.

The judgment of the trial court is reversed and a new trial ordered.

DeBruler and Hunter, JJ., concur; Arterburn, C. J., dissents with opinion in which Givan, J., concurs.

## DISSENTING OPINION

ARTERBURN, C. J.—I agree with a great deal of what is said in general in the majority opinion with reference to the use of sound recordings and the encouragement of their use.

However, I can not agree with the conclusion of the majority opinion that because this court on appeal believes that the recording [contrary to what the trial judge found] was inaudible and not understandable, that the court committed error in admitting the tape recording of the defendant's conversation to the jury.

In the first place, we have no right to reweigh the evidence heard by the trial court on this point, nor to get down on the trial bench and retry the case on the theory, as stated in the majority opinion, that we might be "in a position superior to that of the trial court to decide an issue, the determination of which is entirely discretionary."

I do not need to cite authorities for the proposition that in a case on appeal when there is any evidence to support the

trial court, we do not retry the case because we think the trial court did not weigh the facts and the evidence as we would have done.

Neither do I accept the statement that in reviewing an abuse of discretion by a trial judge "it is merely a good faith difference of opinion upon an issue viewed from altogether different perspectives." We should not view it from a different perspective; but we should view it from the perspective of the trial judge on the trial bench who had many facts to weigh and consider that we do not have in the record here. Therefore, I do not think it was proper for us in this court to replay the tape and weigh the evidence and decide the tape was inaudible. It was done on a different machine than that used in the trial court; and there had been numerous replayings of the tape, which no doubt is dimmed by such frequent usage.

The record does show that the trial court found the tape audible and the judge struck out portions which he thought were not relevant, as a competent judge would do with reference to conversations. The record further shows that a transcription of the tape was made after certain portions were ordered stricken by the judge and placed in the record. We query how this could be done at the time of the trial if the tape was so inaudible. The record does not show what volume of sound or loudness was used in replaying this tape to the jury. All of this was evidence which the trial judge had on the bench which we do not have here on appeal.

I consider this tape recording much the same as testimony of a witness or a conversation introduced into evidence. If we may take tape recordings and replay them in this court, which is part of the evidence in the trial court, and consequently determine whether or not they are audible or understandable, then it follows naturally that where the same questions arise with reference to a witness who speaks broken English or who has a speech impediment, we should hear the witness in this court a second time to determine whether or not the trial

court was using sound discretion in permitting such witness to testify. The fact that part of a conversation repeated by a witness was not audible, or could not be heard does not make other relevant portions of the conversation inadmissible. All of these matters should go to the jury if they are relevant for determining what value or credibility the jury desires to give them. I feel that the same rule should apply to a tape recording of a conversation that otherwise is admissible because it is relevant.

Again, I feel that we have usurped the prerogative of a trial judge to decide facts within the surrounding circumstances that we do not have here on appeal. We should not do this so long as there is any evidence to support the finding of fact of the trial judge.

The principle of appellate review requires that we should not disturb the trial court's finding and substitute our own personal opinions as to how we would have decided the facts if there is any evidence to support the trial court's ruling.

Givan, J., concurs.

NOTE.—Reported in 282 N. E. 2d 795.