RAYMOND WILLIAMS *v.* STATE OF INDIANA

[No. 3-1177A283. Filed December 21, 1978.]

*John J. Roper*, of South Bend, for appellant.

*Theodore L. Sendak*, Attorney General of Indiana, *Elmer Lloyd Whitmer*, Deputy Attorney General, for appellee.

HOFFMAN, J. — Appellant Raymond Williams was tried by the court and convicted of theft by exerting unauthorized control over stolen property of Champion Home Builders Co., Inc. (Champion) of a value in excess of $100, to wit: eight Craig 8-track tape recorders with AM/FM radio, Model 3148-A, Serial Nos. 161-54877, 161-55284, 161-55280, 161-54878, 161-54876, 161-53629, 161-55282 and 161-54874. Appellant argues in this appeal that: (1) the evidence is insufficient as a matter of law to show that he controlled the property; (2) he was entrapped by the police officers; and (3) he was prejudiced by the admission of the video tape because the sound was not of sufficient clarity to be enlightening to the court.

The evidence most favorable to the State shows that FBI Agent DuPriest and Indiana State Police Sergeant Hampshire were working undercover out of a warehouse at 719 Wilbur Street in South Bend in a "sting" operation set up to buy stolen property. DuPriest operated the video tape recorder during all transactions. Hampshire testified that on July 7, 1976, he received a call from James Coley (Jim). Jim told Hampshire that he had been told by another "fence" to contact Hampshire concerning the sale of some stolen Craig, in-dash 8-track tape players with AM/FM radios. Appellant and his companion, Jim, arrived at the warehouse shortly after Jim had called.

The evidence shows that appellant and Jim brought the eight tape players previously described and sold them to Hampshire. The tape players were all in boxes and seven of them were packaged in styrofoam and a plastic bag; the eighth one was not. Hampshire paid $50 apiece for the tape players, $150 to Jim and $250 to appellant. Hampshire testified that appellant said he had one that did not have packaging and that that particular tape player is State's Exhibit Nos. 1 and 2 Hampshire also testified that on three other occasions appellant and Jim came in to sell radios and tape players.

Anthony Dzurka, employee of Champion, testified that on July 4, 1976, there was a break-in at Champion at which time 13-15 Craig 8-track tape players with stereo AM/FM radios were taken. Dzurka identified State's

Exhibits Nos. 1 and 2, through the serial number (161-54877) engraved on the back of the tape player, as one belonging to Champion which had been stolen on July 4, 1976 and that the tape players were valued at $120 each. Dzurka also testified that appellant was employed by Champion from April to August of 1976.

The video tape, admitted into evidence over appellant's objection and played for the court, showed Jim and appellant transacting business with police agents on four different occasions. The first segment showed the July 7, 1976 transaction, charged in the indictment involved herein. The picture was clear and all eight boxes containing tape players were shown but the sound was inaudible due to the noise of a fan which had been turned on shortly before appellant's arrival. As to the other three occasions on which appellant and Jim came to the warehouse, the video tape picture was clear and 50% of the sound recording was intelligible. During these segments appellant, Jim and the police agents discussed what goods were "moving" best, i.e., brand new car for $400-$500, televisions, typewriters, and "pieces" (guns).

Appellant argues that the evidence was insufficient to establish that he exerted control over State's Exhibit Nos. 1 and 2. The evidence shows that appellant said that he had one that was not packaged and that that tape player was later identified by Champion as one which was stolen from its business on July 4, 1976. This evidence is sufficient to support the court's finding that appellant exerted control over the stolen tape player. *Collins v. State* (1976), 169 Ind.App. 375, at 378, 348 N.E.2d 413, at 415.

Appellant next argues that he was entrapped by the police operation, i.e., that without the existence of the sting operation he would not have committed the crime. Entrapment is a defense which exists when the defendant has been induced or lured by a government agent to commit a crime he had no predisposition to commit. *Mendez v. State* (1977), 267 Ind. 67, at 72, 367 N.E.2d 1081, at 1084. But if the criminal design springs from the mind of the defendant, there is then no entrapment. *Mendez v. State, supra.* The evidence is that appellant and his companion contacted the police agents at 719 Wilbur because they had heard from another "fence" that they could sell stolen goods to the people located at the warehouse. Opportunity

to make a profit from stolen goods will always be present. Presentment by a police agent of the mere opportunity to sell stolen goods does not constitute entrapment. *Johnson v. State* (1971), 255 Ind. 589, 266 N.E.2d 57.

Appellant's last argument is that the video tape admitted into evidence was prejudicial because it was not of sufficient clarity to be intelligible, citing *Lamar v. State* (1972), 258 Ind. 504, 282 N.E.2d 795. As stated previously, in the first segment of the video tape showing the July 7, 1976 transaction, the conversation was admittedly inaudible, while the conversation in 50% of the remaining three segments was audible and intelligible.

Appellant's reliance upon *Lamar* is misplaced. In *Lamar* a tape (*audio only*) was played for a *jury*. The tape recorded an interview police officers had with the defendant. The court in *Lamar* was concerned that the jury "[b]eing unable to understand its content when reproduced through the audio device . . . could only speculate thereon. Although we cannot say with certainty that such speculation lead (sic) to Defendant's conviction, we think it placed him in a position of grave peril to which he should not have been subjected." The trial court is presumed to be above such speculation. *See: In Re Adoption of Thornton* (1976), 171 Ind.App. 457, at 461-2, 358 N.E.2d 157, at 159. In a decision by the Supreme Court involving a tape recording played at a disciplinary hearing, *Matter of Wood* (1976), 265 Ind. 616, 358 N.E.2d 128, the court distinguished *Lamar*. The court observed, in response to an objection to the lack of clarity of the tape recording, that *Lamar* involved a jury and that that distinction is crucial since in *Wood* lay persons were not involved in the fact-finding process and only persons trained in the law weighed evidentiary matters.

Another distinction is important. In the case at bar the video tape was of substantial probative value even without intelligible sound recording. The picture was clear and showed that several meetings did take place between appellant and police agents. And as such, it was merely corroborative of the testimony which the agents presented at trial. The trial court properly admitted the video tape recording.

The judgment is affirmed.

Affirmed.

Garrard, P.J. concurs.

Staton, J. concurs in result.

NOTE — Reported at 383 N.E.2d 444.