**William Edgar JONES, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 780S198.

Supreme Court of Indiana.

Aug. 28, 1981.

Gary R. Landau, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, William Edgar Jones, was charged with two counts of conspiracy to commit dealing in a controlled substance, Ind.Code § 35–41–5–2 (Burns 1979 Repl.); delivery of a controlled substance, Ind.Code § 35–48–4–2(1) (Burns 1979 Repl.); attempted delivery of a controlled substance, Ind.Codes §§ 35–48–4–2(1) and 35–41–5–1 (Burns 1979 Repl.); and being an habitual offender, Ind.Code § 35–50–2–8 (Burns 1979 Repl.). He was convicted by a jury on all counts except one of the conspiracy counts. He was sentenced to concurrent ten-year terms on each of the substantive counts and to a thirty-year consecutive term on the habitual offender count. His direct appeal raises the following issues:

1. Whether the trial court erred in admitting a tape recording of a telephone conversation between defendant and an informant;

2. Whether a 1965 rape conviction was too remote to be relied upon for the habitual offender determination; and

3. Whether the trial court erred in overruling an offer to prove mitigating circumstances during the habitual offender proceeding.

A summary of the facts from the record most favorable to the state shows that Charles Tucker was an informant who had known special agent, Stephen White, for about five years. In March of 1979, Tucker informed White that he had met defendant and talked with him about obtaining drugs. On April 11, 1979, Tucker and White arranged to meet defendant at a motel for the purpose of buying three to four ounces of phencyclidine. They met defendant and his girlfriend, Patricia Russell, in the bar of the motel. White gave Tucker $1,800 and he handed it over to defendant. This was half the total purchase price which defendant required to be paid in advance.

Russell stayed in the bar with White and Tucker, while defendant left for about two hours. When defendant returned, the transaction was completed outside by his car. Defendant gave Tucker a brown paper bag containing the drugs and White put the balance of the money on the dashboard of defendant's car. These actions were observed by another police officer on surveillance. Tucker had been carefully searched before the meeting took place. Laboratory tests on the substance provided by defendant confirmed that it contained phencyclidine.

On April 16, 1979, the informant Tucker spoke with defendant on the telephone and arranged to buy a larger quantity of drugs for $16,000. This conversation was recorded and monitored by agent White. Later that day a friend of defendant, James Williams, helped defendant cut the phencyclidine with baking powder and package it. Defendant told Williams he thought this might be the "big one," but later he said he was afraid they might be dealing with the police. They finally decided to get rid of the drugs by placing the bag under a trash dumpster. Both defendant and Williams were arrested later that day at a motel.

I.

■ Defendant first contends that the trial court erred in admitting into evidence the tape-recorded telephone conversation between the informant, Tucker, and defendant that was made on April 16, 1979. Defendant argues that since there were "gaps" in the tape, it was impossible to determine whether it was authentic and correct. He further argues that no evidence was introduced to show that agent White was competent to operate the recording device and therefore the state had failed to establish a proper foundation.

We find no merit to these contentions in view of the extensive testimony concerning this recording in the record. Agent White testified that he had used this particular tape recording method as many as fifty times before. He testified that one gap occurred during the middle of the conversation when he had to turn the cassette over and it got stuck. White was listening to the call the entire time and stated that while the tape was off, the conversation continued about details of the drug transac-

tion. The other gap was at the end of the conversation when the tape ran out one or two minutes before the call ended. Agent White testified that he recognized the voice on the tape as that of defendant. Defendant, himself, testified that it definitely was his voice on the tape. Defendant does not contend that the unrecorded part of the conversation contained any crucial remarks that would change the nature of the conversation.

It is well established that the admission of sound recordings must be preceded by a foundation meeting five requirements. *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795:

> "(1) That it is authentic and correct;
> (2) That the testimony elicited was freely and voluntarily made, without any kind of duress;
> (3) That all required warnings were given and all necessary acknowledgments and waivers were knowingly and intelligently given;
> (4) That it does not contain matter otherwise not admissible into evidence; and
> (5) That it is of such clarity as to be intelligible and enlightening to the jury."
> *Id.* 258 Ind. at 513, 282 N.E.2d 795.

Only the first of these requirements is questioned by defendant in this case. As we stated in *Lamar v. State, supra* :

> "The tape speaks for itself with regard to its audibility. If it is of adequate quality in this regard, it is immaterial how it became so; and there is no more reason for inquiring into the specifications of the device which recorded it and the capabilities of the person who operated it than there would be to make similar inquiries concerning the camera, the film, developing and printing processes and the technician who produced a photograph before admitting it into evidence. All that is required is a showing that the photograph is an adequate representation of that which is intended to be portrayed. We see no reason for requiring more of a sound recording." *Id.* 258 Ind. at 507, 282 N.E.2d 795.

In this case, the police officer who listened to the conversation while it was being taped testified about the contents of the tape. Defendant identified his own voice on the tape. Defendant does not challenge the clarity and intelligibility of the tape or the voluntariness of the conversation. The police officer testified as to the chain of custody of the tape from the time it was recorded until the trial. We find that all requirements for the admission of the tape recording were met and there was no error in its admission.

## II.

Defendant next argues that the state should not have been permitted to use his 1965 rape conviction as one of the two prior felonies during the habitual offender proceeding as it concerned an act committed over fifteen years prior to the instant trial. While he admits that there are no Indiana cases to support his theory, he cites the recent amendment to the habitual offender statute as a confirmation of his position. Our habitual offender statute, Ind.Code § 35–50–2–8 (Burns 1979 Repl.) was amended in 1980 by the addition of subsection (e) as follows:

> "If the court finds that ten [10] years or more have elapsed between the date the person was discharged from probation, imprisonment, or parole (whichever is later) for the last prior unrelated felony conviction and the date he committed the felony for which he is being sentenced as an habitual offender, then the court may subtract up to twenty-five [25] years from the additional fixed term of thirty [30] years." Ind.Code § 35–50–2–8(e) (Burns 1980 Supp.) effective date, April 1, 1980.

We find that this amendment does not apply to defendant's case since his trial was in February of 1980. However, the amendment would not apply to defendant even in theory since the wording shows that its purpose is to allow a reduced sentence for habitual offenders who have *remained* free of criminal liability for a continuous period of ten years. Defendant testified at trial that he had been convicted of rape in 1965, possession of heroin in 1975, and theft

in 1979. There was no error in the admission of evidence of defendant's 1965 rape conviction during the habitual offender proceeding.

### III.

Defendant's final allegation of error is that the trial court erred in overruling part of his written offer to prove during the habitual offender proceeding. He contends that under section (f) of the habitual offender statute he has the right to present evidence attacking his prior convictions. This argument must fail for two reasons. The statute reads:

"(f) *If a reduction of the additional thirty [30] year fixed term is authorized under subsection (e)*, the court may also consider the aggravating or mitigating circumstances in IC 35–4.1–4–7 to:

"(1) Decide the issue of granting a reduction; or

"(2) Determine the number of years, if any, to be subtracted, under subsection (e)."

Ind.Code § 35–50–2–8(f) (Burns 1980 Supp.) (emphasis added.)

This section is clearly conditioned upon the requirements of section (e) which defendant does not meet, as we pointed out in Issue II above.

Furthermore, we have clearly held that the alleged invalidity of prior convictions cannot be collaterally attacked during the course of an habitual offender proceeding when the prior final judgments are regular on their face. *Morris v. State*, (1980) Ind., 406 N.E.2d 1187. Defendant does not argue that the state failed to prove the two prior felony convictions. Finally, the trial judge did allow defendant to present a great deal of evidence regarding the circumstances of the prior convictions although he was under no legal obligation to do so. We find no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.