Charles HUNT, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 582 S 170.

Supreme Court of Indiana.

Feb. 23, 1984.

Reginald B. Bishop, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Indiana, Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

The Defendant (Appellant) was convicted, after trial by jury, of two counts of Violation of the Indiana Uniform Controlled Substances Act, dealing in a narcotic drug, Ind.Code § 35–48–4–1 (Burns 1979), a class B felony, and was sentenced to sixteen years imprisonment. This direct appeal presents four (4) issues for review:

1. Whether the evidence was sufficient to sustain the verdict of the jury.

2. Whether the trial court erred in refusing to admit certain audio tapes which were recorded simultaneously with video tapes admitted into evidence.

3. Whether a sufficient chain of custody was shown to permit admission of the confiscated substance.

4. Whether the trial court committed fundamental error by refusing Defendant's request to be permitted to represent himself.

On November 28, 1980, members of the Federal Drug Enforcement Administration (DEA), in cooperation with the Marion County Sheriff's Department, conducted a controlled purchase of heroin through a paid informant, Joanna Burress. Before purchasing the drug Burress placed a telephone call to arrange the purchase. This conversation was monitored and tape recorded by DEA Agent Tony King. Burress was strip searched and a transmitter was placed in her purse. Her automobile was also searched, and she remained within the constant view of the DEA agents until she entered the apartment where the drug was

purchased. Upon leaving the apartment Burress was again under constant surveillance until she arrived back at the DEA headquarters where both she and her automobile were again searched and Burress gave a packet containing a powder substance to Agent King. Laboratory analysis revealed that the confiscated substance weighed eight-tenths (.8) of a gram, and was composed of one half of one percent (.5%) heroin together with several non-controlled adultrates.

On December 3, 1980, Burress made a second purchase. The same procedures were followed as for the first purchase, except the transaction was conducted in the parking lot of a liquor store. Laboratory analysis of the substance confiscated in this purchase revealed that it weighed six-tenths (.6) of a gram, and was composed of nine-tenths of one percent (.9%) heroin combined with several non-controlled adultrates.

### ISSUE I

■ First, Defendant argues that it was incumbent upon the State to show that the substance sold by him, heroin, was one listed in Schedule I, Ind.Code § 35–48–2–4, and that it had failed to submit such evidence.

Initially we note that Defendant has failed to show any possible harm which he could have incurred by this omission. Secondly, we note that the inclusion of heroin in Schedule I was put in evidence during the cross-examination of a defense witness.

Defendant next argues that there was insufficient evidence to prove that the confiscated substance contained heroin. We find no merit in this argument. Two (2) separate tests were performed upon the substance contained in each packet and all test results were positive for the presence of heroin. Defendant argues that the State must prove that the "substance confiscated contained a sufficient amount of a controlled substance in order that the probability of experimental error in testing is not significant." We are aware of no au-

thority, nor does Defendant refer us to any, which supports his proposition that the tests utilized do not provide scientifically reliable data when performed upon small quantities of substance such as those involved in this case.

The sole authority presented by Defendant upon this issue is *Releford v. State,* (1975) 163 Ind.App. 534, 325 N.E.2d 214, in which the Court of Appeals held:

"The fact that the percentage of heroin was or could have been very low does not alter the fact that the tests were conclusive as to the presence of heroin and that the substance seized was possessed and sold by [the defendant]."

163 Ind.App. at 538–39, 325 N.E.2d at 217. The evidence was sufficient to sustain the verdict.

### ISSUE II

Defendant assigns error to the trial court's ruling admitting State's Exhibit # 27, a video tape of the December 3, 1980 transaction, but excluding the audio portion which had been recorded simultaneously with the recording of the video portion. The trial court excluded the audio portion of the tape on the basis that it was inaudible and therefore inadmissible under the standards established by this Court in *Lamar v. State,* (1972) 258 Ind. 504, 282 N.E.2d 795. Defendant urges us to adopt a less restrictive standard with regard to audio tapes which are recorded simultaneously with video tapes. He argues that such audio tapes should be admissible if they are "at all distinguishable and tend[s] to make the video more understandable." (Brief of Appellant at 14–15).

■ In determining whether or not sound tapes should be admitted in evidence, we accord trial courts substantial latitude in the review of its audibility. Its decision will be disturbed only for an abuse of discretion. *Winningham v. State,* (1982) Ind., 432 N.E.2d 24, 27; *Lamar v. State,* 258 Ind. at 512, 282 N.E.2d at 800. In *Lamar* we held that for an audio tape to be admissible it must be, among other things,

"of such clarity as to be intelligible and enlightening to the jury." 258 Ind. at 513, 282 N.E.2d at 800. The trial court here found that the audio tape was "inaudible." Clearly, a tape which is inaudible cannot possibly meet the standard we established in *Lamar*, nor could it meet the standard which the Defendant, without authority or persuasive argument, urges us to adopt. Moreover, the Defendant has failed to provide us with the tapes in question, without which it is impossible to review the trial court's ruling. Upon this record we cannot find an abuse of discretion.

## ISSUE III

The Defendant next argues that the confiscated substance was erroneously admitted into evidence, in that there was no proper chain of custody shown. DEA Agent King testified that upon receiving the substance from Burress he immediately placed it in a plastic evidence bag and heat-sealed the bag. He then placed the bag in a brown envelope which he sealed and mailed to the North Central Regional Laboratory (NCRL). King identified the bag by several markings placed upon it before mailing, including his initials and the date. Roger Fuelster, the chemist, testified as to the condition of the bag when he removed it from the vault at the NCRL. His description of it at the time he removed it matched Agent King's description of it at the time he mailed it and indicated that the bag had not been tampered with prior to his opening it for analysis. Fuelster also testified in detail concerning his testing procedures and the manner in which he returned the substance to the bag and resealed it.

■ Although the State must establish a complete chain of custody of the evidence, *Graham v. State*, (1970) 253 Ind. 525, 530–32, 255 N.E.2d 652, 654–55, all possibilities of tampering need not be excluded. *Everroad v. State*, (1982) Ind., 442 N.E.2d 994, 1002; *Guthrie v. State*, (1970) 254 Ind. 356, 362–64, 260 N.E.2d 579, 583–84. "The State must present only evidence which strongly suggests the whereabouts of the evidence at all times .... [It] is not required to exclude every possibility of tampering." *Everroad*, 442 N.E.2d at 1002. It is necessary only that there be reasonable assurances that the exhibit has passed through the various hands in an undisturbed condition. *Everroad*, 442 N.E.2d at 1002; *Guthrie*, 254 Ind. at 362–64, 260 N.E.2d at 583–84.

■ In this case the undisputed testimony of the State's witnesses leaves little, if any, possibility that this evidence had been tampered with. The Defendant, on the other hand, has presented nothing more than mere speculations with no support in fact or authority. The evidence was properly admitted.

## ISSUE IV

Defendant assigns error to the trial court's denial of his motion to proceed *pro se*. On the morning of trial Defendant orally moved to proceed *pro se*. The dialogue which followed, however, reveals that his request was actually to act as co-counsel under what is known as "hybrid" representation. *See Lock v. State*, (1980) Ind., 403 N.E.2d 1360, 1364–1366.

■ Although there is a constitutional right to represent oneself *pro se, Faretta v. California*, (1975) 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562, this right must be properly asserted by a clear and unequivocal request within a reasonable time prior to the first day of trial. *Dixon v. State*, (1982) Ind., 437 N.E.2d 1318, 1321; *Russell v. State*, (1978) 270 Ind. 55, 62, 383 N.E.2d 309, 313. Failure to make a timely request is deemed a waiver of the right. *Dixon*, 437 N.E.2d at 1321; *Russell*, 270 Ind. at 62–64, 383 N.E.2d at 313.

■ However, this Court has refused to recognize a constitutional right to act as co-counsel. *Lock v. State*, 403 N.E.2d at 1364–65. Whether to permit a defendant to act as co-counsel is entirely within the discretion of the trial court, *Lock v. State*, 403 N.E.2d at 1365, and its decision will not be overturned absent a clear showing of abuse of discretion. In this case, the trial

court, in accordance with this Court's ruling precedent, held that the Defendant's request, made on the morning of trial, was untimely. *See Dixon v. State,* 437 N.E.2d at 1321; *Russell v. State,* 270 Ind. at 62, 383 N.E.2d at 313. We find no abuse of discretion in this ruling.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.