Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.

APPELLANT PRO SE:

**DARRELL McNARY**

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
## COURT OF APPEALS OF INDIANA

**FILED**

Dec 27 2013, 10:34 am

CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| DARRELL McNARY, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 20A05-1211-PC-607 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
Cause No. 20C01-0606-FB-31

**December 27, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Darrell McNary appeals *pro se* the order of the Elkhart Circuit Court denying his petition for post-conviction relief. On appeal, McNary presents six issues, which we renumber and restate as: (1) whether the trial court erred in concluding that McNary was not denied the effective assistance of trial counsel; and (2) whether the trial court erred in concluding that McNary was not denied the effective assistance of appellate counsel.

We affirm.

**Facts and Procedural History**

The facts underlying McNary's convictions were set forth in our memorandum decision on direct appeal as follows:

> On January 10, 2006, McNary sold 1.342 grams of crack cocaine to Justin Simpson (Simpson), a cooperating source for the Elkhart County Interdiction and Covert Enforcement Unit. The controlled buy occurred near the 88-mile marker on the U.S. 20 bypass in Elkhart County, in the presence of undercover Goshen Police Detective Jose Miller (Detective Miller). The drug transaction was recorded by a digital recording device in the cigarette lighter of Simpson's car. That recording was eventually transferred onto a CD.

> On June 23, 2006, the State filed an Information charging McNary with dealing cocaine, as a Class B felony, I.C. § 35-48-4-1. At the initial hearing held on July 13, 2006, a public defender was appointed to represent McNary. On September 28, 2006, the trial court, after warning McNary of the dangers of representing himself, reluctantly granted McNary's request to proceed pro se and appointed a public defender to serve as standby counsel. On October 5, 2006, the trial court tentatively set a trial date of April 30, 2007. At a hearing on January 25, 2007, the trial court urged McNary to allow the public defender to assist him in his defense, but McNary declined. The trial court confirmed the trial date of April 30, 2007.

> On April 12, 2007, McNary asked that the trial be rescheduled "as a result of appeal or mandamus action he's pursuing." The trial court granted McNary's request and reset the trial for September 10, 2007. At a hearing on April 26, 2007, the trial court again warned McNary of the dangers of proceeding pro se, but McNary affirmed his desire to represent himself.

On May 24, 2007, McNary filed a Motion to Obtain Funds For Expert and Investigative Assistance requesting, among other things, an "audio production analyst" to help him show that the audio recording of the alleged drug transaction had been manipulated. The trial court directed McNary "to provide the Court with an estimate of the cost and identification of who his alleged expert would be with respect to such issues." On August 22, 2007, McNary provided the trial court with Defendant's Information of Names and Cost of Expert Witnesses. McNary claimed that "[t]he cost for audiotape authentication will be $3,500, and court testimony will be $3,500 per day, plus travel from New York." However, McNary never identified who his expert would be, and the trial court never explicitly ruled on this motion.

On August 29, 2007, McNary filed a motion seeking a continuance of the September 10, 2007, trial date. The trial court granted McNary's motion and reset the trial for April 21, 2008. At a hearing on October 18, 2007, McNary indicated to the trial court that he intended to employ private counsel. The trial court reduced McNary's bond, and he was released on bond shortly thereafter.

During a hearing held on April 3, 2008, McNary told the trial court that he would not be ready for the April 21st trial and requested another continuance. The trial court denied McNary's request. At a hearing on April 14, 2008, McNary told the trial court that he had hired an attorney and would be represented at trial. However, on April 18, 2008, McNary filed another motion for a continuance. McNary stated that he had contacted several attorneys but that none of them would represent him unless he could get a continuance.

A jury trial was held on April 21-22, 2008. On the morning of April 21, the trial court held a hearing on McNary's motion for a continuance. The trial court denied McNary's motion, noting how long the case had been pending and how long McNary had to obtain a private attorney. McNary then asked that his standby counsel from the public defender's office represent him at trial, and the trial court so ordered. Over McNary's objection, the trial court admitted into evidence the audio recording of the alleged drug transaction. Both Simpson and Detective Miller testified that the audio recording was an accurate representation of the drug transaction. The jury found McNary guilty as charged. On May 15, 2008, the trial court sentenced McNary to fifteen years, with thirteen years executed and two years suspended to reporting probation.

McNary v. State, No. 20A03-0806-CR-296 (Ind. Ct. App. Feb. 26, 2009) (record citations and footnotes omitted).

On direct appeal, McNary claimed that: (1) the trial court erred by denying his motion for a continuance that was filed three days before the trial was to begin; (2) the trial court erred in admitting into evidence the audio recording of the controlled buy; and (3) that McNary's sentence was inappropriate. This court disagreed and affirmed McNary's conviction and sentence. See id.

McNary filed a *pro se* petition for post-conviction relief on December 14, 2009. The State filed its answer on January 8, 2010. McNary later amended his petition three times. The post-conviction court held hearings on McNary's petition on November 22, 2011 and August 9, 2012, after which the court took the matter under advisement. On October 18, 2012, the trial court issued an order denying McNary's petition. McNary now appeals.

**Post-Conviction Standard of Review**

Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. McCary v. State, 761 N.E.2d 389, 391 (Ind. 2002). Rather, post-conviction proceedings afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. Davidson v. State, 763 N.E.2d 441, 443 (Ind. 2002). A post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. Henley v. State, 881 N.E.2d 639, 643 (Ind. 2008). On appeal from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. To prevail on appeal from the denial of post-conviction relief, the

petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. Id. at 643-44.

Where, as here, the post-conviction court makes findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we cannot affirm the judgment on any legal basis, but rather, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), aff'd of reh'g, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings under a clearly erroneous standard. Id. Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. Id.

**Ineffective Assistance of Trial Counsel**

McNary first argues that the post-conviction court clearly erred in denying his claim of ineffective assistance of trial counsel. Our supreme court summarized the law regarding claims of ineffective assistance of trial counsel in Timberlake v. State as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

5

proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The Strickland Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the Strickland test are separate and independent inquiries. Thus, [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted). McNary claims that his trial counsel was ineffective in several respects. We address each of these claims in turn.

A. *Failure to Tender Instruction Defining "Delivery"*

McNary first claims that his trial counsel was ineffective for failing to tender an instruction defining the term "delivery." McNary was convicted of dealing cocaine, and in order to convict him, the jury was instructed that it had to find beyond a reasonable doubt that McNary "did knowingly *deliver* cocaine, pure or unadulterated[.]" Direct Appeal App. pp. 327-28 (emphasis added). Although the jury was given an instruction on the definition of "knowingly," the jury was not given an instruction regarding the statutory definition of "delivery." "Delivery" is defined by statute as "an actual or constructive transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship; or (2) the organizing or supervising of an activity described in subdivision (1)." Ind. Code § 35-48-1-11.

6

McNary testified at trial that he did not actually deliver the cocaine, and there was an inconsistency between the State's two main witnesses—the confidential informant and the undercover police officer involved in the controlled buy—as to whom McNary actually handed the cocaine. McNary argues on appeal that, had his counsel objected to the court's failure to instruct the jury on the meaning of the term "delivery" or if he had tendered his own instruction, the trial court would have been obligated to give the instruction. Further, McNary argues that the jury could not have come to a proper verdict without being instructed on the meaning of "delivery." We disagree.

First, we note that McNary's trial counsel testified at the post-conviction hearing that he did not recall specifically why he had not requested an instruction on the definition of "delivery." But he further testified that, as a matter of trial strategy, he does not ask for such definitional instructions because he feels the jury is more open to argument with regard to such terms. We emphasize that trial counsel is afforded considerable discretion in choosing strategy, and we must afford these decisions deference. Timberlake, 753 N.E.2d at 603. We will not second-guess trial counsel's strategic decisions simply because, in hindsight, they may not have served the defendant's best interests. State v. Moore, 678 N.E.2d 1258, 1261 (Ind. 1997).

Further, we do not think that "delivery" is a term that the jury was unable to understand without a statutory definition. Indeed, "delivery" has been defined to include "[t]he action of handing over, or conveying into the hands of another[.]" Oxford English Dictionary Online, http://www.oed.com/view/Entry/49488; see also Merriam-Webster Online, http://www.merriam-webster.com/dictionary/delivery (defining delivery as "the

7

act of taking something to a person or place"). Thus, it was not impossible for the jury to reach a proper verdict without special instruction on the meaning of the term "delivery."

Moreover, it is not enough for McNary to show that the jury should have been instructed on the statutory definition of delivery. He must also show how he was prejudiced by the lack of such an instruction. See Potter v. State, 684 N.E.2d 1127, 1135 (Ind. 1997). Here, McNary has failed to show how he was prejudiced. In fact, the statutory definition of "delivery" is broader than the common definition, as it includes actual or constructive transfer and also the organization or supervision of such a transfer. Therefore, had the jury been instructed on the statutory definition of "delivery," it would have increased McNary's chances of being convicted. Accordingly, we cannot say that the post-conviction court clearly erred in concluding that McNary's trial counsel was not ineffective for failing to request a jury instruction on the statutory definition of "delivery."

B. *Failure to Object to Accomplice Liability Instruction*

McNary next claims that his trial counsel was ineffective for failing to object to the accomplice liability instruction given by the trial court. The trial court gave the jury the following instruction on accomplice liability:

> A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense, even if the other person:
> 1)  Has not been prosecuted for the offense;
> 2)  Has not been convicted of the offense; or
> 3)  Has been acquitted of the offense.

Direct Appeal App. p. 333. This instruction tracks the accomplice liability statute, Indiana Code section 35-41-2-4.

8

McNary admits that his trial counsel did object to the trial court's instruction on grounds that it changed the State's theory of the case and that accomplice liability had not been pled in the charging information. The trial court, however, correctly overruled this objection. See Laney v. State, 868 N.E.2d 561, 565-66 (Ind. Ct. App. 2007) (observing that it is "axiomatic in Indiana that one may be charged as a principal yet convicted on proof that he or she aided another in the commission of a crime," and that "[e]ven where a defendant is charged as a principal, the jury may be instructed on accessory liability where the evidence presented at trial supports such an instruction.").

McNary claims that his trial counsel should have instead objected on grounds that the State had failed to present any evidence of McNary acting as an accomplice, as both of the State's eyewitnesses testified that McNary himself delivered the cocaine. However, McNary himself testified that he drove a woman to the controlled buy, that she was the one who delivered a package to the undercover officer, that he knew that this woman was trying to "rip off" the purchasers, and that he "somewhat" knew that there was going to be an exchange of drugs. See Trial Tr. pp. 417-19. Although his testimony conflicted with that presented by the State's witnesses, there was nevertheless some evidence that McNary assisted another in the delivery of cocaine. This was sufficient to permit the trial court to instruct the jury on accomplice liability. See Taylor v. State, 840 N.E.2d 324, 338 (Ind. 2006) (noting that an instruction on accomplice liability is proper where there is *some evidence* that a second party was involved in the crime).

McNary also argues that his trial counsel should have objected to the trial court's accomplice liability instruction because the instruction was incomplete. Specifically, he

9

claims that the trial court's instruction was deficient because it "failed to focus on the knowledge and conduct of McNary and wholly failed to instruct that McNary must have engaged in some affirmative conduct in aiding or inducing the offense." Appellant's Br. pp. 35-36. We disagree.

The instruction given by the trial court stated that "a person who *knowingly or intentionally aids*, induces, or causes another person to commit an offense commits that offense[.]" Direct Appeal App. p. 333 (emphasis added). And the jury was instructed on the meaning of "knowingly" and "intentionally." Thus, the instructions as a whole clearly informed the jury with regard to the knowledge and conduct of McNary. And with regard to McNary's claim that the instruction failed to instruct the jury that McNary must have engaged in affirmative conduct, we have previously held that the word "aid" denotes affirmative conduct or action and sufficiently informs the jury of the affirmative-action requirement. Boney v. State, 880 N.E.2d 279, 294 (Ind. Ct. App. 2008), trans. denied.

Moreover, given the strength of the State's case-in-chief, which included the testimony of multiple eyewitnesses and an audio recording of the controlled buy, it is highly unlikely that the jury credited McNary's testimony at all. That is, it is much more likely that they found him guilty as a principal, not as an accomplice. Thus, even if the trial court's instruction was incomplete, McNary has not shown that the result of the trial would have been different.

The question is not whether the trial court should have given the pattern jury instruction on accomplice liability, as this is usually the best practice. Instead, the

question is whether McNary's trial counsel was ineffective for failing to object to the trial court's instruction on accomplice liability and whether he was prejudiced by this failure. Under the facts and circumstances before us, the post-conviction court did not clearly err in concluding that McNary's trial counsel was not ineffective for failing to object to the given accomplice liability instruction.

C. *Failure to Object to "False" Testimony*

McNary next claims that his trial counsel was ineffective for failing to object to the testimony of the confidential informant, Simpson. During deposition and during his trial testimony, Simpson stated that the undercover officer, Detective Miller, handed McNary the buy money and that McNary handed the Detective Miller cocaine. When the State used Simpson as a foundational witness to establish the authenticity of the audio recording of the transaction, the prosecutor asked, "does this audio recording fairly and accurately capture the drug transaction between you and Darrell McNary on January 10, 2006?" Simpson responded, "Yes." Trial Tr. pp. 268-69. Detective Miller, however, testified that Simpson handed the buy money to McNary and that McNary then reached over Detective Miller's body to hand the cocaine directly to Simpson.

McNary interprets Simpson's assertion that the audio recording was accurate as tantamount to corroborating Detective Miller's testimony that McNary handed the cocaine to Simpson, which was contrary to Simpson's actual testimony.

This interpretation seems to reflect a fundamental misunderstanding about the nature of the prosecutor's question regarding the accuracy of the audio recording. The admission of a sound recording must be preceded by a foundation disclosing that the

11

recording is, *inter alia*, authentic and correct and of such clarity as to be intelligible and enlightening to the jury. Hall v. State, 897 N.E.2d 979, 981 (Ind. Ct. App. 2008) (citing Lamar v. State, 258 Ind. 504, 512-13, 282 N.E.2d 795, 800 (1972)). The prosecutor's question was not an attempt to get Simpson to vouch for Detective Miller's testimony; it was simply an attempt to establish the foundation for the admission of the audio recording. Indeed, the prosecutor asked the same question of Detective Miller.

Based upon his flawed interpretation of the prosecutor's question, McNary claims the State elicited false testimony from Simpson to which his trial counsel should have objected and which constituted prosecutorial misconduct. We disagree.

First, to the extent that McNary attempts to assert a free-standing claim of fundamental error due to prosecutorial misconduct, our supreme court has repeatedly held that free-standing claims of fundamental error may not be presented in a claim for post-conviction relief. See Stephenson v. State, 864 N.E.2d 1022, 1029 (Ind. 2007) (citing Sanders v. State, 765 N.E.2d 591, 592 (Ind. 2002)).

Instead, McNary must present his claim through the lens of a claim of ineffective assistance of trial counsel. But even then, his claim fails. McNary does not explain on what basis his trial counsel should have objected to keep Simpson's testimony out of evidence. We are unaware of any valid evidentiary objection to inconsistent or even false testimony. In fact, McNary's trial counsel testified at the post-conviction hearing that he knew of no objection to this testimony.

McNary also claims that his trial counsel was ineffective for failing to impeach Simpson with his allegedly false testimony. Again, however, McNary's claim that

12

Simpson's testimony was false is based upon a misunderstanding of the nature of the prosecutor's foundational question. Moreover, his counsel did reference the confusion with regard to whom McNary actually handed the cocaine in his closing argument. See Trial Tr. p. 430 ("we have not yet had two people in the same place saying I gave it to him or I gave it to him or who gave it to who."). In short, McNary did not establish that his trial counsel was ineffective with regard to the admission of Simpson's testimony.

D. *Failure to Suppress Probable Cause Affidavit*

McNary further claims that his trial counsel was ineffective for failing to attempt to suppress the probable cause affidavit supporting the charging information, which he claims relied on improper hearsay and was not properly attested. McNary claims that, had his counsel sought to suppress this probable cause affidavit, he would have been entitled to a suppression hearing. McNary's argument is misplaced.

Deficiencies regarding the probable cause affidavit supporting a charging information do not warrant a dismissal of the information. Frierson v. State, 572 N.E.2d 536, 537 (Ind. Ct. App. 1991) (citing Hicks v. State, 544 N.E.2d 500 (Ind. 1989); Gilliam v. State, 270 Ind. 71, 383 N.E.2d 297 (1978)). This is so because "the probable cause affidavit is not the manner by which a defendant is charged with a crime, but rather serves to justify the pre-trial detention of a defendant based on alleged facts reasonably believed to show the defendant committed the crime." Id. (quoting State v. King, 502 N.E.2d 1366, 1369 (Ind. Ct. App. 1987)). In fact, a probable cause determination is not even a prerequisite to the filing of an information. Id.

Moreover, to the extent that McNary claims that he was entitled to a suppression hearing on the probable cause affidavit, he fails to explain precisely what would have been suppressed as a result of this hearing, and makes no claim that any of the evidence the State used against him was the fruit of this arrest. Accordingly, McNary's trial counsel was not ineffective for failing to seek to suppress the probable cause affidavit.

## II. Ineffective Assistance of Appellate Counsel

McNary lastly claims that the post-conviction court clearly erred when it determined that he was not denied the effective assistance of appellate counsel. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel. Harris v. State, 861 N.E.2d 1182, 1186 (Ind. 2007). That is, the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. Id. Claims of ineffective assistance of appellate counsel generally fall into three categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. Reed v. State, 856 N.E.2d 1189, 1195 (Ind. 2006).

To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. Id. To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the

14

unraised issues are "clearly stronger" than the raised issues. Id. If the analysis under this test demonstrates deficient performance, then we examine whether, "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." Id. Our supreme court has repeatedly noted that we must consider the totality of an attorney's performance to determine whether the client received constitutionally adequate assistance and must be "particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made." Id. at 1196 (quoting Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997)). Moreover, ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. Id.

McNary claims that his appellate counsel was ineffective for failing to present on direct appeal the issues he claims his trial counsel was ineffective for failing to pursue, i.e., the trial court's failure to instruct the jury on the meaning of the word "delivery," the trial court's instruction on accomplice liability, the introduction of allegedly-false testimony by Simpson, and the alleged infirmity of the probable cause affidavit supporting the charging information. We have determined above that these claims are

without merit. Therefore, McNary's appellate counsel was not ineffective for failing to present these claims on direct appeal.[1]

## Conclusion

The post-conviction court did not clearly err in concluding that McNary was not denied the effective assistance of trial and appellate counsel.

Affirmed.

BRADFORD, J., and PYLE, J., concur.

---

[1] McNary also complains that the post-conviction court clearly erred by dismissing his claim of prosecutorial misconduct. However, as noted above, McNary may not present a free-standing claim of fundamental error on post-conviction review. Stephenson, 864 N.E.2d at 1029.