IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
APRIL 2000 SESSION

## STATE OF TENNESSEE v. GERALD W. McCULLOUGH

**Direct Appeal from the Circuit Court for Bedford County**
**No. 14393 William Charles Lee, Judge**

---

**No. M1999-01525-CCA-R3-CD - Filed August 18, 2000**

---

The defendant, Gerald W. McCullough, was convicted of aggravated sexual battery. The trial court imposed a twelve-year sentence. In this appeal of right, the defendant contends that the trial court erred by allowing proof of more than one instance of sexual misconduct and by imposing an excessive sentence. Because the sentence was not excessive, and because the defendant waived the issue of the admissibility of uncharged sex crimes, the judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

John E. Herbison, Nashville, Tennessee (on appeal), and Andrew Jackson Dearing, III, Shelbyville, Tennessee (at trial), for the appellant, Gerald W. McCullough.

Paul G. Summers, Attorney General & Reporter, Marvin E. Clements, Jr., Assistant Attorney General, and Michael David Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant was indicted on four separate counts:

ONE: On July 28, 1998, engaging in unlawful sexual contact with DT,[1] less than 13 years of age, in violation of Tenn. Code Ann. § 39-13-504;

TWO: On August 4, 1998, engaging in unlawful sexual contact with HT, less than 13 years of age, in violation of Tenn. Code Ann. § 39-13-504;

---

[1]It is the policy of this court not to reveal the name of a minor who has been the victim of a sex crime.

THREE: On August 8, 1998, engaging in unlawful sexual contact with JB, less than 13 years of age, in violation of Tenn. Code Ann. § 39-13-504; and

FOUR: On August 8, 1998, engaging in unlawful sexual contact with CB, less than 13 years of age, in violation of Tenn. Code Ann. § 39-13-504.

All but Count One were severed prior to trial by agreed order.

In June of 1998, Roy and Tammy Messick moved into a three bedroom mobile home in the Viking Trailer Park in Unionville with their four children: son DT, age 7; daughter HT, age 6; and two other daughters, ages 4 and 3. One month later, Ms. Messick's mother, Eunice York, and her boyfriend, Gerald McCullough, moved into the mobile home to live with the Messick family. The three girls slept in one bedroom, Mr. and Mrs. Messick were in a second bedroom, and the defendant and Ms. York slept in the third. DT slept in the livingroom.

On July 28, Ms. Messick's friend, Sheila Geary, who lived across the street, walked towards the Messick residence to visit. At 10:00 P.M., as she approached the door, Ms. Geary looked through two large windows in the living room and observed the defendant, seated inside, masturbating in the presence of DT. The blinds were open and a lamp lit the inside of the living room. Ms. Geary testified that the defendant "had his pants undone, and he had his thing and he was masturbating . . . [a]nd [DT] was standing in between his legs, right in front of him." Ms. Geary knocked on the door and DT unlocked it, at which point Ms. Geary entered the residence and exclaimed to the defendant, "I saw what you have done." Ms. Geary then walked to the Messicks' bedroom and asked Ms. Messick to step outside, where she told Ms. Messick what she had seen. As she did so, the defendant paced back and forth in the living room. Approximately ten days later, Ms. Geary complained to Al Cacatory, the landlord of the trailer park, who contacted the sheriff's department. Ms. Messick was aware that Ms. Geary had arranged for the landlord to make the call. At the time of the offense, the defendant and Ms. York had rented a residence of their own but did not yet have electricity and other services. By the time Ms. Geary mentioned the incident to the landlord, the defendant and Ms. York had moved into their own dwelling.

There was proof at trial that after the defendant's arrest, he sent letters to Ms. York addressed to the Messick residence. In one letter, the defendant urged Ms. Messick and DT "to leave town" so as to miss a scheduled court hearing. The letter was signed "GX."

DT, a second grader, testified that the defendant "did a bad thing to me." He recalled that the defendant touched his penis more than once and that he had turned his head when the defendant tried to persuade him to look at his penis. He testified that on one occasion, the defendant "tried to make [him] suck it." DT stated that he refused. He recalled that on another occasion, while he was in bed, the defendant got into the bed and placed his penis against his bottom; DT stated that he had clothes on at the time and that he refused the defendant's request to remove his pants.

-2-

DT explained that the defendant got in bed with him one afternoon after school and that Ms. York was living at an apartment at that time. DT recalled that the Messicks had gone to the races that day. He stated that the day before, while the Messicks had gone to the store, the defendant had tried to show him his penis. Later in his testimony, DT conceded that the event may have occurred on a Saturday, when school was not in session. DT claimed that the defendant "tried to make [him] pull down [his] pants," but that he refused and the defendant did not touch him.

DT also remembered the night that Ms. Geary came into the residence. He testified that just before Ms. Geary entered, the defendant took his penis out of his pants. DT denied, however, that there was any sexual contact. DT recalled that the defendant instructed him "not to tell anybody . . . because he didn't want to get in trouble."

On redirect examination, DT testified that he would not allow the defendant to touch his penis and that he refused to cooperate on the day the defendant asked him to suck his penis. He stated that the defendant rubbed his penis on his bottom only once.

On August 10, 1998, Detective David Adams of the Bedford County Sheriff's Department, a member of the child protective investigative team, was notified of the incident witnessed by Ms. Geary. He and other officers interviewed the Messicks, DT, and Ms. Geary, and, on the next day, interviewed the defendant. Chief Deputy Dale Elliott assisted in the interview, which was conducted at the sheriff's department. In the initial interview, the defendant denied any type of inappropriate contact with DT. Afterward, the defendant was placed under arrest. Before being taken to jail, the defendant asked to make a second statement. Detective Adams testified that the defendant acknowledged that he had asked DT to touch his penis. When asked whether he had rubbed his penis on the body of DT, the defendant stated that he could not remember because he was "using marijuana at the time frame." Both statements were tape recorded.

At the conclusion of the evidence, the state elected to rely only upon the instance when DT claimed to have been touched on the bottom by the defendant while in the bedroom.

Initially, the defendant argues that the state improperly elicited evidence of at least five incidents of attempted sexual contact between the defendant and DT. He points out that DT testified that he touched DT's penis "more than once" and that he wanted DT to touch his penis and also "tried to make [DT] suck it." The defendant cites testimony by DT that he had tried (but failed) to take DT's pants off and that he had already touched the bottom of DT, who was wearing pants at the time. Because the defendant did not object at trial to the unindicted instances of misconduct, he relies upon the plain error doctrine in this appeal.[2]

The state submits that the issue has been waived, not only because there was no contemporaneous objection to the testimony, but also because the ground was not included in the motion for new trial. See Tenn. R. App. P. 3(e); Tenn. R. App. P. 36(a); State v. Killibrew, 760

---

[2]Appellate counsel did not represent the defendant at trial.

S.W.2d 228, 235 (Tenn. Crim. App. 1988).

Tennessee Rule of Evidence 404(a) provides that "[e]vidence of a person's character or trait of character is not admissible for the purpose of proving action in conformity with the character or trait" absent exceptional circumstances. Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>
> (1)     The court upon request must hold a hearing outside the jury's presence;
>
> (2)     The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>
> (3)     The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Generally, this rule is one of exclusion but there are, as stated, exceptions. See State v. Parton, 694 S.W.2d 299 (Tenn. 1985); Bunch v. State, 605 S.W.2d 227 (Tenn. 1980); Carroll v. State, 370 S.W.2d 523 (Tenn. 1963); see also State v. Rickman, 876 S.W.2d 824 (Tenn. 1994) (favorably citing both Parton and Bunch). Most authorities suggest trial courts take a "restrictive approach [to] 404(b) . . . because 'other act' evidence carries a significant potential for unfairly influencing a jury." See Neil P. Cohen, et al., Tennessee Law of Evidence § 404.7, at 170-71 (3d ed. 1995). That best explains the traditional posture of the courts that any testimony of prior bad acts by a defendant, when used as substantive evidence of guilt of the crime on trial, is not usually admissible. Parton, 694 S.W.2d at 302-03. The general exceptions to the rule are when the evidence is offered to prove the motive, identity, or intent of the defendant, the absence of mistake, opportunity, or a common scheme or plan. Bunch, 605 S.W.2d at 229; see Laird v. State, 565 S.W.2d 38 (Tenn. Crim. App. 1978). One authority suggests that the "completion of the story" may also be a relevant basis for admission under Rule 404(b). Cohen, et al., § 404.6, at 169. Recently, in State v. Gilleland, ____ S.W.3d ____ (Tenn. 2000), our supreme court observed that "if the contextual evidence is relevant to an issue other than criminal propensity and its probative value is not outweighed by the danger of unfair prejudice, then the evidence may be properly admitted."

Our supreme court has spoken on the dangers of admitting into evidence prior sex-related bad acts in the context of a case involving a child victim. The following passage, perhaps, best illustrates the reason for the rule:

The general rule excluding evidence of other crimes [or acts] is based on the recognition that such evidence easily results in a jury improperly convicting a defendant for his or her bad character or apparent propensity or disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial. Such a potential particularity exists when the conduct or acts are similar to the crimes on trial.

\* \* \*

[I]t is clear that the victim's testimony about other uncharged sex crimes was error. . . . Moreover, the prejudice resulting from [the testimony regarding uncharged sex crimes] outweighs its probative value. . . .

Rickman, 876 S.W.2d at 828 and 830 (emphasis added) (citations omitted).

In Getz v. State, 538 A.2d 726 (Del. l988), a case cited by our supreme court in Rickman, the Delaware Supreme Court made further comment upon the rationale behind the rule:

"[W]e are no more inclined to endorse [the assumption that a defendant's propensity for satisfying sexual needs is so unique that it is relevant to his guilt] than we are to consider previous crimes of theft as demonstrating a larcenous disposition and thus admissible to show proof of intent to commit theft on a given occasion."

Rickman, 876 S.W.2d at 829 (quoting Getz, 538 A.2d at 734) (alteration in original).

Traditionally, courts have not permitted the prosecution to establish through acts of prior misconduct any generalized propensity on the part of a defendant to commit crimes. See e.g., State v. Teague, 645 S.W.2d 392 (Tenn. 1983). A jury cannot be allowed to convict a defendant for bad character or any particular "disposition to commit a crime regardless of the strength of the evidence concerning the offense on trial." Rickman, 876 S.W.2d at 828 (citing Anderson v. State, 56 S.W.2d 731 (1933)).

In Rickman, the supreme court did acknowledge a special exception allowing for the admission of evidence of other sex crimes when the indictment is not time-specific and when the evidence relates to sex crimes that occurred within the period charged in the indictment. 876 S.W.2d at 829. In these instances, the state must elect the particular incident for which a conviction is sought. Id. The rationale for the exception is that "evidence of a prior sex crime that is necessarily included within the charge of the indictment is also necessarily relevant to the issues being tried and, therefore, is admissible." Id. In Rickman, our supreme court concluded that the victim's testimony about other uncharged sex crimes was erroneous and that prejudice resulting from the testimony outweighed its probative value. Id. at 830.

The defendant makes a persuasive argument on appeal that the admission of the unindicted instances of sexual misconduct was erroneous. He relies on the plain error doctrine for two reasons. First, there was no contemporaneous objection and second, the issue was not included in the motion for new trial. Generally, the failure to raise an issue in a motion for new trial results in a waiver. Rule 3(e) of the Tennessee Rules of Appellate Procedure provides that for appeals "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, . . . or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived."

Whether properly assigned or not, however, this court may consider plain error upon the record. State v. Ogle, 666 S.W.2d 58 (Tenn. 1984). Before an error may be so recognized pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure, the error must be "plain" and it must affect a "substantial right" of the accused. The word "plain" is synonymous with "clear" or equivalently "obvious." United States v. Olano, 507 U.S. 725, 732 (1993). Plain error is not merely error that is conspicuous. Plain error is especially egregious error that strikes at the "fairness, integrity, or public reputation of judicial proceedings." See State v. Wooden, 658 S.W.2d 553, 559 (Tenn. Crim. App. 1983). In State v. Adkisson, 899 S.W.2d 626, 639 (Tenn. Crim. App. 1994), this court defined "substantial right" as a right of "fundamental proportions in the indictment process, a right to the proof of every element of the offense and . . . constitutional in nature." In that case, this court established five factors to be applied in determining whether an error is plain:

> (a)    The record must clearly establish what occurred in the trial court;
>
> (b)    a clear and unequivocal rule of law must have been breached;
>
> (c)    a substantial right of the accused must have been adversely affected;
>
> (d)    the accused did not waive the issue for tactical reasons; and
>
> (e)    consideration of the error is "necessary to do substantial justice."

Id. at 641.

The Adkisson test was recently formally adopted by our supreme court, which characterized the test as a "clear and meaningful standard" and emphasized that all five factors must be established before a trial error will be considered as plain error. State v. Smith, _____ S.W.3d _____ (Tenn. 2000), No. 12495, 2000 WL 872830 (June 30, 2000).

In this case, the testimony of DT, only seven years old, was not as strong as the state might

have preferred. For example, the victim believed that school was in session at the time of the offense and that the incident occurred after a day at school. Other testimony by him contradicted that. Ms. Geary and the other witnesses at the trial established that the incident had to have occurred during the summer when school was not in session. DT denied that he cooperated with the defendant and then recalled only the one instance which had occurred in his bed. That is, DT did not testify that the defendant touched his genitals or that he touched the defendant's genitals. While he alluded to "more than one" incident of sexual aggression on the part of the defendant, his testimony, in the light most favorable to the state, was that only the one instance of actual sexual contact had occurred. DT stated that he was in bed, fully clothed, when the defendant pressed his penis against the clothing covering his bottom. Except for the specific incident that occurred in the bed of DT, there was little upon which to base a felony conviction.

By the application of the factors established in Adkisson, it is our view that the error here did not rise to the level of plain or obvious error. Initially, while our supreme court has been consistent in the general exclusion of uncharged sex crime testimony, the issue was not argued at all during the trial. Thus the record is not sufficiently developed for a complete analysis. Appellate counsel did not try the case, so he is at a disadvantage, as are we, in evaluating the issue in hindsight. For example, it is possible that trial counsel for the defendant chose not to object or to otherwise waive the issue for tactical reasons. Had the state been less specific in the indictment as to dates and times of the contact, the other references in the testimony to sexual impropriety on the part of the defendant might have been admissible under the special exception recognized in Rickman. The state did not have the opportunity to offer legitimate reasons for one of the several exceptions to Rule 404(b). The reference to other possible sex crimes is not nearly so significant in this case as in State v. McCary, 922 S.W.2d 511 (Tenn. 1996), or State v. Woodcock, 922 S.W.2d 904 (Tenn. Crim. App. 1995). Moreover, DT testified that he refused to cooperate with the defendant's advances and had only marginal contact through clothing on the one occasion. Finally, the trial court did require an election on the part of the state to assure a unanimous verdict on the specific incident in DT's bedroom. On balance, the factors weigh against a determination of plain error. In consequence, the issue must be treated as having been waived for failure to present the ground in the motion for new trial.

Next, the defendant argues that the 12-year sentence is excessive. Despite a prior criminal history, the defendant qualified as a Range I offender, subject to a sentence of 8 to 12 years. The defendant argues that the trial court erred by refusing to apply as a mitigating factor Tenn. Code Ann. § 40-35-113(1):

> The defendant's criminal conduct neither caused nor threatened serious bodily injury.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v.

Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987). The record in this case demonstrates that the trial court made adequate findings of fact.

If the trial court's findings of fact are adequately supported by the record, this court may not modify the sentence even if it would have preferred a different result. State v. Fletcher, 805 S.W.2d 785 (Tenn. Crim. App. 1991). The presumption of correctness is, however, "conditioned upon the affirmative showing in the record that the trial court considered sentencing principles and relevant facts and circumstances." Ashby, 823 S.W.2d at 169. The trial court must place on the record the reasons for the sentence. State v. Jones, 883 S.W.2d 597 (Tenn. 1994).

The trial court found the following enhancement factors:

> (1) That the defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;
>
> (8) That the defendant has a previous history of unwillingness to comply with the conditions of his sentence involving release in the community;
>
> (13)(A) That the felony was committed while the defendant was on bail if the release is from a prior felony conviction; and
>
> (15) That the defendant abused a position of public or private trust.

Tenn. Code Ann. § 40-35-114.

While many of his prior convictions were several years old, the defendant did have ten prior felony offenses according to the pre-sentence report. He also admitted to using marijuana. The trial court placed significant weight upon the defendant's prior criminal record in determining that the maximum sentence was appropriate. Because the defendant had twice violated the conditions of his parole, the trial court had a basis for the application of factor (8). Moreover, he was on bail on two felony charges at the time that he was convicted of this offense. Thus, (13)(A) applied. Finally, as

the boyfriend of DT's grandmother, he had been allowed to share the Messick residence. The defendant was entrusted with some level of supervision over the seven-year-old victim, as the only adult left in the trailer with the child on this occasion.

In our view, the trial court properly applied each and every enhancement factor. While it may be true that the defendant's conduct did not cause serious bodily injury, that factor would have little weight in light of the considerable weight given each of the enhancement factors. In our view, the trial court did not err in imposing the maximum sentence.

_____

GARY R. WADE, PRESIDING JUDGE